IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY BARNES,

       Plaintiff,

                                CV 11-142-PK

v.

                                FINDINGS AND
                                RECOMMENDATION

CHASE HOME FINANCE, LLC, CHASE
BANK USA, N.A., IBM LENDER
BUSINESS PROCESS SERVICES, INC.,
and JOHN AND JANE DOES 1-10,

       DefendantS.

PAPAK, Magistrate Judge:

       Plaintiff *pro se* Timothy Barnes filed this action against defendants Chase Home Finance,

LLC ("CHF"), Chase Bank USA, N.A. ("CBUSA" and, collectively with CHF, the "Chase

defendants"), IBM Lender Business Process Services, Inc. ("LBPS"), and ten fictitiously named

"Doe" defendants on February 4, 2011. Barnes' claims in this action arise out of a mortgage loan

he took out on his home in 2007. Barnes asserts that at closing of the mortgage transaction, he

was not provided with statutorily adequate notice of his right to rescind the transaction, and

Page 1 - FINDINGS AND RECOMMENDATION AND ORDER

argues that, in consequence, the duration of his statutory right to rescind the transaction was extended from three days to three years, as a mater of law. Barnes alleges that he submitted a valid notice of his intent to exercise his right of rescission more than two years, but less than three years, following the date the mortgage transaction closed, and that the defendants improperly failed to effect rescission of the mortgage loan in response to his notice.

In this action, Barnes expressly seeks rescission of his home mortgage loan under the Truth in Lending Act ("TILA"), Regulation Z, based on purported defects in the notification he received at closing of his right to rescind the transaction, and expressly alleges a claim for declaratory judgment that defendants have no valid security interest in his home. In addition, Barnes prays for statutory and actual damages in connection with defendants' purported failure to provide adequate notice of his right to rescind, statutory and actual damages in connection with the Chase defendants' failure to effect rescission of the mortgage loan following their receipt of his notice of exercise of his right to rescind, and injunctive relief to enjoin the defendants from initiating or prosecuting non-judicial foreclosure proceedings on the property, from recording any deeds or mortgages regarding the property, or from taking any steps to deprive him of his ownership rights in the property, although he does not expressly allege formal claims for such relief.

Now before the court are the Chase defendants' motion (#20) to dismiss Barnes' rescission claim for failure to state a claim pursuant to Federal Civil Procedure Rule 12(b)(6), and LBPS' motion (#25) to dismiss Barnes' rescission claim for lack of subject-matter jurisdiction pursuant to Federal Civil Procedure Rule 12(b)(1) and to dismiss Barnes' remaining claims for failure to state a claim pursuant to Rule 12(b)(6). I have considered the motions, oral

argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, the Chase defendants' motion should be denied as moot, and LBPS' motion should be granted.

**LEGAL STANDARDS**

**I.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

The federal courts are courts of limited jurisdiction. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005), *citing Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As such, the courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *see also, e.g., Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

A motion under Federal Civil Procedure Rule 12(b)(1) to dismiss for lack of subject-matter jurisdiction may be either "facial" or "factual." *See Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack on subject-matter jurisdiction, the moving party asserts that a plaintiff's allegations are insufficient on their face to invoke federal jurisdiction, whereas in a factual attack, the moving party disputes the factual allegations that, if true, would give rise to subject-matter jurisdiction. Where a defendant raises a facial challenge to subject-matter jurisdiction, the factual allegations of the complaint are presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). By contrast, where a defendant raises a factual challenge to federal jurisdiction, "the district court may review evidence beyond the

complaint without converting the motion to dismiss into a motion for summary judgment," *Safe Air v. Meyer*, 373 F.3d at 1039, *citing Savage*, 343 F.3d at 1039 n.2, and "need not presume the truthfulness of the plaintiff's allegations," *id.*, *citing White*, 227 F.3d at 1242.

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. It is improper to dismiss an action based on a defective allegation of jurisdiction without leave to amend "unless it is clear, upon de novo review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002), *citing Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001).

## II.    Motion to Dismiss for Failure to State a Claim

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United*

*States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND

### I.    The Parties.

Plaintiff Timothy Barnes is the owner and resident of a residential property located at 590 South Greenwood Road in Independence, Oregon (the "property"). Defendant CHF is a Delaware limited liability corporation with its principal place of business in New Jersey. Defendant CBUSA is a Delaware corporation with its principal place of business in Delaware. Defendant LBPS is a Delaware corporation with its principal place of business in North Carolina.

Barnes alleges that CHF is the current assignee of the original holder of the mortgage on the property, and that CBUSA, apparently the original mortgage-holder, remains in some sense a creditor with respect to the mortgage loan. Notwithstanding the foregoing, Barnes attaches as exhibits to his complaint documents establishing that the mortgage was transferred to Fannie

Mae. Barnes alleges that LBPS subsequently became the "servicer" of the mortgage loan.

Barnes makes no allegations as to the identity, role, or actionable conduct of the Doe defendants.

## II.    Barnes' Factual Allegations

According to the allegations of Barnes' complaint, in early October 2007 Barnes

contacted a broker, Revere Mortgage Services Group, for the purpose of applying for a mortgage

loan on the property, in his own words "for personal use, and to cash out the value of his home."[1]

Complaint, ¶ 13. Barnes alleges that the mortgage loan transaction closed on November 15,

2007, "with [CBUSA]'s settlement agent." *Id.*, ¶ 16. The mortgage loan was in the principal

amount of $378,250, and was secured by a "Deed of Trust" on the property. *Id.*, ¶ 18.

Barnes alleges that, at closing, CBUSA's "closing agent" First American Title Company

of Oregon provided him with, *inter alia*, "Two (2) unsigned copies of a Notice of Right to

Cancel." *Id.*, ¶ 19. Barnes alleges that each of the two copies of the "Notice of Right to Cancel"

with which he was provided at closing was defective in that it purportedly recited an inaccurate

closing date and an inaccurate expiration date for Barnes' right of rescission. *See id.*, ¶ 53; *see*

*also id.*, ¶¶ 24-27, 30-32.

Barnes attaches as an exhibit to his complaint all of the documents he alleges he was

provided at closing, including the two copies of the allegedly defective notice of his rescission

right that he alleges he received at closing. *See id.* at Exh. 1. None of the documents Barnes

alleges he received at closing bears any signature, initials, or other markings, including the two

---

[1] Barnes actually alleges that this occurred in 1997, but the context of the allegation
strongly suggests that Barnes erred when he wrote 1997, and that in fact he intended to allege
that these events occurred in 2007.

Page 6 - FINDINGS AND RECOMMENDATION AND ORDER

copies of his allegedly defective right of rescission notice.[2]  *See id.*

The notice of right to rescission that Barnes alleges he was provided at the closing of the loan transaction and that Barnes has attached as an exhibit to his complaint states, in relevant part, as follows:

> You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from **whichever of the following events occurs last**:
>
> (1) The date of the transaction, which is November 14, 2007; or
>
> (2) The date you received your Truth-In-Lending disclosures; or
>
> (3) **The date you received this notice of your right to cancel.**
>
> * * *
>
> You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. . . .

---

[2]  The "Borrower's Settlement Statement" Barnes alleges he received at closing bears a "print date" of November 15, 2007, *id.*, Exh. 1 at 3, the "Estimated Statement" Barnes alleges he received at closing bears a "print date" of November 15, 2007, *id.*, Exh. 1 at 5.  However, the "Deed of Trust" Barnes alleges he received at closing bears a "print date" of November 14, 2007, *id.*, Exh. 1 at 8, and references a note in the amount of $378,250 dated November 14, 2007, *id.*, Exh. 1 at 9, and the copy of the "Balloon Note" that constitutes the mortgage loan and that Barnes alleges he received at closing is dated November 14, 2007, *id.*, Exh. 1 at 23.  Similarly, the "Closing Instructions" Barnes alleges he received at closing recites November 14, 2007, as the "Date of Closing" of the mortgage transaction and states that the "Loan must close by: 11/14/2007."  *Id.*, Exh. 1 at 26.  The "Truth-In-Lending Disclosure Statement" that Barnes alleges he received at closing bears the date November 14, 2007, *id.*, Exh. 1 at 35, 36, the "Initial Escrow Account Disclosure Statement" that Barnes alleges he received at closing is dated "[a]s of 11/14/2007," *id.*, Exh. 1 at 37, the "Transfer of Servicing Disclosure Statement" that Barnes alleges he received at closing is dated November 14, 2007, *id.*, Exh. 1 at 46, the "Notice of Assignment, Sale or Transfer of Servicing Rights" that Barnes alleges he received at closing is dated November 14, 2007, *id.*, Exh. 1 at 47, the "Borrower's Certification & Authorization" that Barnes alleges he received at closing is dated November 14, 2007, *id.*, Exh. 1 at 51, 52, and the "Undertaking and Errors and Omissions Form" that Barnes alleges he received at closing is dated November 14, 2007, *id.*, Exh. 1 at 53.

Page 7 - FINDINGS AND RECOMMENDATION AND ORDER

> If you cancel by mail or telegram, you must send the notice no later than midnight of <u>November 17, 2007</u> (**or midnight of the third business day following the latest of the three events listed above**). If you send or deliver your written notice to cancel some other way, it must be delivered . . . no later than that time.

*Id.* at 32, 33 (bolded emphasis supplied; underlining original). Other than the specifically recited dates appearing in the two underlined sections, the language of this notice is in all material respects identical to that of the model form notice of the right to rescission provided by the Federal Reserve Board. *See* 12 C.F.R. 226, Appx. H-8.]

Barnes alleges that in June 2010 he obtained a copy of the closing documents from First American Title. *See id.*, ¶ 33. Barnes further alleges that the copy of the rescission right notice that he obtained from First American Title in June 2010 bore "forged initials and forged dates." *Id.*, ¶ 34. The allegedly altered copy of the notice that Barnes obtained in June 2010, like the copy he was provided at closing in November 2007, is attached as an exhibit to Barnes' complaint. The copy of the notice obtained in June 2010 is undated, and bears a signature purporting to be that of Barnes in acknowledgment of his receipt of two copies of the notice. *See id.*, Exh. 2. Next to the printed date "November 14, 2007" (the purported date of the mortgage loan transaction) the date "11-15-07" and the initials "TB" are handwritten. *Id.* In addition, the printed date "November 17, 2007" is lined through, with the handwritten number "18" appearing, likewise lined through, above the printed number "17," and with the handwritten date "11-19-07" and the handwritten initials "TB" appearing next to it. *Id.*

Barnes alleges that, on August 4, 2010, he "sent a written Rescission Notice to all known interested parties by U.S. Postal Service certified mail." *Id.*, ¶ 36. Barnes alleges that the Chase defendants failed to respond in any way to his rescission notice. *See id.*, ¶ 39. However, Barnes

further alleges that in September 2010, he received notice from CHF that "the servicing" of

Barnes' mortgage on the property would be transferred from CHF to LBPS effective October 1,

2010. *See id.*, ¶ 40; *see also id.*, Exh. 5. In October 2010, it appears that Barnes advised LBPS

of his attempt to exercise his right of rescission, and on January 21, 2011, LBPS wrote to Barnes

to advise him of LBPS' position that his right to rescission had expired, and to invite him to

clarify his concerns with particularity. *See id.*, ¶¶ 44-45; *see also id.*, Exh. 6. LBPS' letter also

advised Barnes that "[t]he owner of [his] loan is Federal National Mortgage Association (Fannie

Mae)," and that "LBPS is servicing your loan on behalf of Fannie Mae." *Id.*, Exh. 6. There is no

evidence in the record to suggest that Barnes responded to LBPS' communication of January

2011.

### III.    Barnes' Claims in this Action

Barnes filed this action against the Chase defendants, LBPS, and the Doe defendants on

February 4, 2011. Construed liberally, Barnes' complaint raises five distinct claims for relief: (i)

a claim for rescission of the November 2007 mortgage loan, (ii) a claim for declaratory judgment

that defendants' security interest in the property is void, (iii) a claim for damages in connection

with defendants' purported failure to provide adequate notice of Barnes' rescission right at or

around the time of closing, (iv) a claim for damages in connection with the Chase defendants'

failure to effect rescission of the mortgage loan following their receipt of Barnes' notice of intent

to exercise his right to rescind, and (v) a claim for injunctive relief to enjoin the defendants from

initiating or prosecuting non-judicial foreclosure proceedings on the property, from recording any

deeds or mortgages regarding the property, or from taking any steps to deprive Barnes of his

ownership rights in the property.

## ANALYSIS

The Truth in Lending Act was enacted in 1968 as Title I of the federal Consumer Credit Protection Act. TILA's stated purpose is:

> to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a) (2000).

TILA requires lenders in consumer credit transactions to make clear disclosure of the key terms of the proposed transactions. *See* 15 U.S.C. § 1601 *et seq.* TILA provides remedies to consumers in the form of statutory and actual damages, including for minor or "technical" violations of TILA. *See Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989); *see also* 15 U.S.C. § 1640. A plaintiff may recover statutory damages for violation of TILA's disclosure requirements whether or not the plaintiff suffered cognizable actual damages. *See So. Discount Co. of Ga. v. Whitley (In re Whitley)*, 772 F.2d 815, 817 (11th Cir. 1985) (statutory damages must be imposed regardless of whether actual damages resulted from the violation). If the creditor is liable for damages, then the plaintiff may also be awarded reasonable attorney's fees and costs incurred in connection with bringing an action under TILA. *See* 15 U.S.C. § 1640 (a)(3). TILA provides a one year statute of limitations for such civil damages claims. *See* 15 U.S.C. § 1640(e).

Among the various disclosures required of lenders in consumer credit transactions, TILA (together with its implementing regulations, referred to collectively as "Regulation Z") requires written disclosure of a consumer's right to rescind any transaction secured by the consumer's

principal dwelling within three days following either the consummation of the transaction or delivery of rescission forms and other material disclosures.  *See* 15 U.S.C. § 1635(a); 12 C.F.R. 226.23(a)(3).  Regarding the required rescission notice, Regulation Z specifically provides that:

> a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind . . . .  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

>> (i)  The retention or acquisition of a security interest in the consumer's principal dwelling.

>> (ii)  The consumer's right to rescind the transaction.

>> (iii)  How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

>> (iv)  The effects of rescission, as described in paragraph (d) of this section.

>> (v)  The date the rescission period expires.

12 C.F.R. 226.23(b)(1).  A written acknowledgment by the consumer of receipt of the notice of the right to rescind, if any is obtained, "does no more than create a rebuttable presumption of delivery thereof."  15 U.S.C. § 1635(c).

Ordinarily, "[t]he consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the [rescission] notice [], or delivery of all material disclosures, whichever occurs last."  12 C.F.R. 226.23(a)(3).  However, "if the required notice of the right to rescind is not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."  *Id.*  Timely provision of a materially defective notice of the right to rescind is treated as failure to provide the required notice.  *See, e.g., Palmer v. Champion Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006), *citing Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 174 (1st

Cir. 2004); *see also, e.g., Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th

Cir. 1986) (failure to fill in expiration date on rescission form, although a purely technical TILA

violation, still entitles consumer to rescind loan for up to three years), *citing Williamson v.*

*Lafferty*, 698 F.2d 767, 768-69 (5th Cir. 1983). Unlike TILA's one-year limitations period for

civil damages claims, the three-year period for TILA rescission claims is an absolute statute of

repose. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("[Section] 1635(f)

completely extinguishes the right of rescission at the end of the 3-year period"); *see also Miguel*

*v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir.2002).

In *Miguel*, the Ninth Circuit was presented with a TILA claimant who was entitled to a

three-year period within which to rescind her home mortgage loan. In the last month preceding

expiration of the three-year period, the claimant attempted to exercise her right of rescission, but

sent her notice of rescission to the wrong party (specifically, to the loan servicing agent rather

than to the mortgage holder). On the last day of the three-year period, the claimant filed suit

against the servicing agent, seeking rescission. The court reasoned as follows:

> Miguel argues that she should have been allotted an additional year in which to
> file suit after the expiration of the three-year period afforded by the statute. While
> Miguel is correct that 15 U.S.C. § 1640(e) provides the borrower one year from
> the refusal of cancellation to file suit [for civil damages], that is not the issue
> before us. Rather, the issue is whether her cancellation was effective even though
> it was not received by the Bank - the creditor - within the three-year statute of
> repose. We hold that it was not. While the Bank's servicing agent, Countrywide,
> received notice of cancellation within the relevant three-year period, no authority
> supports the proposition that notice to Countrywide should suffice for notice to
> the Bank, and Miguel has presented no evidence that the Bank received notice of
> cancellation within the three-year limitation period prescribed by the statute.
> Therefore, her right to cancellation was extinguished as against the Bank.

*Miguel*, 309 F.3d at 1165. The *Miguel* court further stated that "[b]ecause cancellation was not

Page 12 - FINDINGS AND RECOMMENDATION AND ORDER

effected during the three-year period, the additional year statute of limitations provided by § 1640 is irrelevant; it relates to the time for filing suit once cancellation has been wrongly refused." *Id.*

A clear majority of district courts interpreting *Miguel* have concluded that, under *Miguel*, even if a borrower makes an attempt to exercise a valid right of rescission within the three-year period of repose (where such period is applicable), no suit may be filed to obtain the remedy of rescission after expiration of that three-year period. *See, e.g., Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 860, 868 (E.D. Cal. 2010) and cases cited therein. However, at least one court has interpreted *Miguel*, to the contrary, as standing for the proposition that where a lender improperly refuses or fails to effect rescission of the loan transaction following a timely attempt to exercise the right, the borrower has a one-year period (specifically, the one-year limitations period provided under 15 U.S.C. § 1640(e)) within which to file a suit seeking rescission, regardless of whether that one-year period extends beyond the end of the three-year period of repose. *See Santos v. Countrywide Home Loans*, Case No. 09-CV-00912-AWI, 2009 U.S. Dist. LEXIS 71736, *7-14 (E.D. Cal. Aug. 14, 2009).

Although the *Santos* court's holding has the virtue of providing borrowers who did not receive adequate notice of their right to rescission at the time their loans closed with a more meaningful opportunity to exercise their right of rescission close to the end of the statutory three-year period than does the *Falcocchia* court's holding, it runs afoul of both the plain language of 15 U.S.C. § 1640(e), which expressly provides that the one-year limitations period it codifies applies only to actions for civil damages brought under Section 1640, and therefore not to actions seeking the remedy of rescission, and the Supreme Court's holding in *Beach* that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period." *Beach*, 523 U.S.

Page 13 - FINDINGS AND RECOMMENDATION AND ORDER

at 412.  The *Falcocchia* line of cases, by contrast, correctly analyzes the applicable TILA

provisions.  Regardless of whether a lender properly and adequately notifies a borrower of the

borrower's right of rescission – and therefore regardless of whether the borrower's right of

rescission expires on the third business day following the closing of the loan transaction or three

years following the closing – the borrower's right to bring an action to obtain the remedy of

rescission is absolutely foreclosed three years after the loan transaction closes.  *See* 15 U.S.C. §

1635(f); *see also Beach*, 523 U.S. at 412; *Miguel*, 309 F.3d at 1165.  In the event the borrower

makes a timely and procedurally proper attempt to exercise the right of rescission and the lender

nevertheless fails to effect rescission of the loan transaction, the borrower may bring an action to

obtain rescission before the end of the three-year period following the closing of the loan

transaction, if that period has not already passed, or may bring an action seeking civil damages to

remedy the lender's failure to effect rescission within one year of the lender's failure to act on the

borrower's attempt to rescind.  *See* 15 U.S.C. §§ 1635(f), 1640(e); *see also Beach*, 523 U.S. at

412; *Miguel*, 309 F.3d at 1165.

    Moreover, the foreclosure of the borrower's right to sue seeking rescission following

expiration of the three-year period is jurisdictional in effect, depriving the federal courts of

subject-matter jurisdiction to consider untimely filed claims for rescission.  *See Miguel*, 309 F.3d

at 1165 ("[w]hen congressionally created limitations on congressionally-created public rights and

benefits completely extinguish the right previously created, courts are deprived of jurisdiction"),

*citing Lyon v. Agusta S.P. A.*, 252 F.3d 1078, 1084-85 (9th Cir. 2001).

    Here, Barnes filed this action on February 4, 2011, more than three years after November

2007 when the mortgage transaction closed.  This court therefore lacks jurisdiction to consider

Page 14 - FINDINGS AND RECOMMENDATION AND ORDER

Barnes' rescission claim. LBPS' motion to dismiss for lack of subject-matter jurisdiction should

therefore be granted as to Barnes' rescission claim, Barnes' rescission claim should be dismissed

for lack of subject-matter jurisdiction, and the Chase defendants' motion to dismiss for failure to

state a claim should be denied as moot as to Barnes' rescission claim.[3]

Barnes' claim for declaratory relief and his prayer for injunctive relief are each necessarily

premised on the proposition that Barnes is entitled to rescission of his mortgage loan. Because

Barnes' right to seek rescission of the loan has been finally and completely extinguished, no

grounds exist for granting the requested declaratory or injunctive relief. LBPS' motion to dismiss

for failure to state a claim should therefore be granted as to Barnes' express claim for declaratory

relief and implicit claim for injunctive relief.

In addition to his claims for rescission and declaratory relief and prayer for injunctive

relief, Barnes' complaint implicitly raises two claims for damages. The first of these arises out of

defendants' purported failure to provide adequate notice of Barnes' rescission right at or around

---

[3] The foregoing analysis is not impacted by Barnes' allegation that, at some time between
November 2007 and June 2010, his signature and initials were "forged" by some unspecified
person to a copy of the right-of-rescission notice that Barnes never saw prior to June 2010. The
lender was under no obligation to provide Barnes with a signed and dated copy of the notice at
the time of closing, and although the absence of Barnes' signature on the copies of the notice he
received in November 2007 deprives defendants of the benefit of the statutory "rebuttable
presumption of delivery" of the notice, *see* 15 U.S.C. § 1635(c), defendants here need not rely on
any such presumption in light of Barnes' express allegation that he received at closing the copies
attached as part of Exhibit 1 to his complaint. The allegedly adulterated copies of the notice that
were provided to Barnes in June 2010 are therefore effectively a red herring, in that it is
unnecessary to resort to the allegedly adulterated notice to determine that Barnes
contemporaneously received all disclosures to which he was entitled under TILA. Barnes does
not allege that he is entitled to any relief on the basis of the alleged post-closing adulteration of a
notice not provided to him at time of closing, nor am I aware of any support for the proposition
that such post-closing adulteration, if any such occurred, could be actionable, particularly in light
of the immaterial nature of the modifications allegedly effected to the document.

Page 15 - FINDINGS AND RECOMMENDATION AND ORDER

the time of closing in November 2007. This claim became time-barred in November 2008 under 15 U.S.C. § 1640(e), more than two years before Barnes filed this action. LBPS' motion to dismiss for failure to state a claim should therefore be granted as to Barnes' first implicit claim for damages.

Barnes' second implicit damages claim arises out of defendants' failure to effect rescission of Barnes' loan following their receipt of his August 2010 rescission notice. This claim was timely filed in February 2011.

Barnes attached as an exhibit to his complaint the notice of his right to rescind which he alleges he received (in two copies) at the time the mortgage transaction closed. The notice is therefore a part of Barnes' complaint, and the court may consider and analyze the notice itself rather than accept as true Barnes' allegations regarding the notice's failure to comply with applicable TILA requirements. Indeed, because the complaint refers to the notice, the notice is central to Barnes' claims, and no party questions whether Barnes actually received the notice he alleges he received at the time of closing, the court could nevertheless treat the notice as part of Barnes' complaint and assume the truth of its contents even had he omitted to attach the notice as an exhibit thereto. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

As noted above, analysis of the notice establishes that it closely tracks the applicable model form developed by the Federal Reserve Board. *See* 12 C.F.R. 226, Appx. H-8. Regulation Z provides that "[a] creditor . . . shall be deemed to be in compliance with [TILA] disclosure provisions . . . with respect to other than numerical disclosures if the creditor  . . . (1) uses any appropriate model form or clause as published by the Board, or (2) uses any such model form or clause and changes it by (A) deleting any information which is not required by this title. .

Page 16 - FINDINGS AND RECOMMENDATION AND ORDER

. , or (B) rearranging the format, if in making such deletion or rearranging the format, the creditor or lessor does not affect the substance, clarity, or meaningful sequence of the disclosure." 15 U.S.C. § 1604(b). The fact that the notice tracks the model form in all material respects therefore creates a presumption that the notice Barnes alleges he received at closing was compliant with applicable TILA requirements.

Moreover, even on the assumption that the notice Barnes alleges he received at closing recited an inaccurate closing date and an inaccurate expiration date, courts that have considered the issue have routinely found that such inaccuracies do not render the notice defective for TILA purposes. The First Circuit in particular has analyzed the question thoroughly, and has determined that the notice language is sufficient to put the average consumer on notice that the inaccurately recited expiration date is not necessarily the last date on which the rescission right may be exercised:

> The plaintiff in this case concedes that she received copies of all the material disclosures mandated under the TILA but alleges that the Notice was "defective" and "confusing." She points specifically to the inclusion of a date-certain deadline for rescission (April 1, 2003) and complains that the designated date already had passed by the time she received the Notice. Relying on our admonition that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all," *Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 174 (1st Cir. 2004) (*quoting Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980)), she asseverates that the confusing nature of the Notice triggered the extended three-year rescission period.
>
> Champion readily concedes, as it must, that the Notice included an April 1 deadline for rescission. But it hastens to add that the Notice twice indicated in plain language that, in the alternative, the debtor had three business days after receipt of the Notice within which to rescind. To strengthen its argument, Champion observes that the Notice is identical in all material respects to the model form authored by the Federal Reserve Board, and that other courts have found such adherence to be an impenetrable shield against TILA-based attacks. *See, e.g., Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 286 (7th Cir. 1997); *Murphy v. Empire of Am.*, 583 F. Supp. 1563, 1566 (W.D.N.Y. 1984); *see*

Page 17 - FINDINGS AND RECOMMENDATION AND ORDER

*also In re Porter*, 961 F.2d 1066, 1076 (3d Cir. 1992) (explaining that "use of an appropriate model form necessarily complies with the [TILA]" (emphasis omitted)). Based on the Notice's plain language and its adherence to the model form, Champion urges us to disregard the plaintiff's subjective state of mind and join the district court in holding the Notice adequate as a matter of law.

We find Champion's argument compelling. Although we are required to view the well-pleaded facts in the light most favorable to the plaintiff, we need not "swallow [her] invective hook, line, and sinker." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). As part and parcel of this approach, we must refrain from crediting her "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" *Chongris*, 811 F.2d at 37 (*quoting Snowden v. Hughes*, 321 U.S. 1, 10, 64 S. Ct. 397, 88 L. Ed. 497 (1944)); *accord Aulson*, 83 F.3d at 3. This methodology is particularly appropriate in the TILA context where we, like other courts, have focused the lens of our inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings. *See, e.g., Barnes*, 370 F.3d at 172-74 (examining the language of disputed disclosures in the face of plaintiff's claim that they were misleading); *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982) (noting that "it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers" in determining whether a disclosure violates the TILA); *Bustamante v. First Fed. Sav. & Loan Ass'n*, 619 F.2d 360, 364 (5th Cir. 1980) (applying objective standard in evaluating TILA claim).

This emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer--a consumer who is neither particularly sophisticated nor particularly dense. *See Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327-28 (7th Cir. 1999) (explaining that TILA disclosures should be viewed from the perspective of an ordinary consumer, not a federal judge); *see also Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291, 296 (5th Cir. 1978) ("We must assess the adequacy of disclosure... by the audience for which disclosure was intended."). Thus, we turn to the question of whether the average consumer, looking at the Notice objectively, would find it confusing. We conclude that she would not.

The Notice itself is annexed to the amended complaint and, therefore, is deemed fair game on a motion to dismiss. *See Centro Medico del Turabo*, 406 F.3d at 5; *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004); *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003). It clearly and conspicuously indicates that the debtor can rescind "within three (3) business days from whichever of [three enumerated] events occurs last." Although the Notice does state in part that rescission has to occur "no later than midnight of APRIL 01,

20.03," the plaintiff wrests this statement from its contextual moorings. The statement is followed immediately by a parenthetical reading "(or midnight of the third business day following the latest of the three (3) events listed above)." We fail to see how any reasonably alert person--that is, the average consumer--reading the Notice would be drawn to the April 1 deadline without also grasping the twice-repeated alternative deadlines.

This facial transparency is bolstered by the fact that the language of the Notice closely tracks the language of the model form. This is, at the very least, prima facie evidence of the adequacy of the disclosure. *See* 12 C.F.R. § 226 Supp. I, Intro. para. 1 ("Good faith compliance with [the Federal Reserve Board's] commentary affords protection from liability under [the TILA]."). Accordingly, we agree with the district court that the Notice was crystal clear and, thus, did not trigger an extended rescission right under the TILA.

*Palmer*, 465 F.3d at 27-29 (footnote omitted). Judge Aiken recently issued an opinion to much

the same effect in this district:

Plaintiff offers no authority or evidence that his loan transaction did not consummate on January 25, 2007. Even though plaintiff may have signed revised disclosure statements on January 29, 2007, the fact remains that he signed the loan agreement and deed of trust on January 25, 2007 and thus became contractually obligated on the loan. 12 C.F.R. § 226.2 (a) (13). I find that the dates on the Notices correctly indicate the date of the loan transaction and three days thereafter. Regardless, the Notices clearly state that plaintiff's right to rescind expires three days after the loan transaction, the date he received disclosure statements, or the date he received the Notice, whichever occurs later. Therefore, I find that the Notices accurately informed plaintiff of his right of rescission.

*Hegrenes v. MGC Mortg., Inc.*, Case No. 10-422-AA, 2011 U.S. Dist. LEXIS 23132, *10-11 (D.

Or. March 3, 2011).

Under the persuasive reasoning of *Palmer* and *Hergenes*, among other cases, even

accepting as true Barnes' contention that the notice he alleges he received at closing recited an

inaccurate closing date and therefore also an inaccurate date for expiration of Barnes' rescission

right (an assumption whose accuracy is belied by analysis of the loan documents themselves, as

noted above), such inaccuracies do not render the notice defective. The notice clearly indicates

Page 19 - FINDINGS AND RECOMMENDATION AND ORDER

that Barnes' right of rescission expired on the third business day following the later of November 14, 2007, the date Barnes received his TILA disclosures, or the date Barnes' received the notice itself. Barnes alleges that he received his TILA disclosures and the notice on November 15, 2007; assuming the truth of Barnes' allegations, his right to rescission therefore expired on the third business day following November 15, 2007, according to the plain language of the notice and as required under applicable TILA provisions.

Because the notice that Barnes alleges he received at closing was compliant with all applicable TILA requirements and free of material defect, Barnes had no entitlement to Regulation Z extension of the rescission period from the statutory three days to three years. Defendants' failure to effect rescission of Barnes' loan following receipt of Barnes' August 2010 rescission notice was therefore not in violation of TILA. LBPS' motion to dismiss for failure to state a claim should therefore be granted as to Barnes' second damages claim.

For the foregoing reasons, all of Barnes' claims in this action should be dismissed, and the court need not reach LBPS' alternative argument that, because it is not an assignee for TILA purposes, it is not subject to liability on Barnes' claims.

## CONCLUSION

For the reasons set forth above, I recommend that the Chase defendants' motion (#20) to dismiss Barnes' rescission claim for failure to state a claim be denied as moot, that LBPS' motion (#25) to dismiss Barnes' rescission claim for lack of subject-matter jurisdiction and to dismiss Barnes' remaining claims for failure to state a claim be granted, that Barnes' rescission claim be dismissed pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject-matter jurisdiction, and that all of Barnes' remaining claims be dismissed pursuant to Federal Civil

Page 20 - FINDINGS AND RECOMMENDATION AND ORDER

Procedure Rule 12(b)(6) for failure to state a claim. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 10th day of June, 2011.

Honorable Paul Papak
United States Magistrate Judge