IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY BARNES,

      Plaintiff,

                                      CV 11-142-PK

v.                                      FINDINGS AND
                                            RECOMMENDATION

CHASE HOME FINANCE, LLC, CHASE
BANK USA, N.A., IBM LENDER
BUSINESS PROCESS SERVICES, INC.,
and JOHN AND JANE DOES 1-10,

      Defendants.

PAPAK, Magistrate Judge:

      Plaintiff *pro se* Timothy Barnes filed this action against defendants Chase Home Finance,

LLC ("CHF" or "JPMCB"[1]), Chase Bank USA, N.A. ("CBUSA" and, collectively with CHF, the

"Chase defendants"), IBM Lender Business Process Services, Inc. ("LBPS"), and ten fictitiously

named "Doe" defendants on February 4, 2011. By and through his complaint as originally filed,

---

[1] Following a corporate restructuring, CHF no longer exists as a discrete corporate entity,
and the successor entity to CHF is JP Morgan Chase Bank, N.A..

Page 1 - FINDINGS AND RECOMMENDATION AND ORDER

Barnes alleged these defendants' liability under the Truth in Lending Act ("TILA") and its implementing Regulation Z in connection with their responses (or failures to respond) to Barnes' notice of his intention to exercise his asserted right of rescission as to a mortgage loan he took out on his home more than two years but less than three years following the date the mortgage transaction closed. On June 10, 2011, I construed Barnes' complaint as alleging claims for (i) rescission of the mortgage loan, (ii) declaratory judgment that defendants have no valid security interest in the subject property, (iii) statutory and actual damages in connection with defendants' purported failure to provide adequate notice of his right to rescind at or around the time the loan documents were signed, (iv) statutory and actual damages in connection with the Chase defendants' failure to effect rescission of the mortgage loan following their receipt of his notice of intent to exercise the rescission right, and (v) injunctive relief to enjoin the defendants from initiating or prosecuting non-judicial foreclosure proceedings on the property, from recording any deeds or mortgages regarding the property, or from taking any steps to deprive him of his ownership rights in the property. Also on June 10, 2011, I recommended that the court grant LBPS' motion to dismiss Barnes' rescission claim for lack of subject-matter jurisdiction and to dismiss Barnes' remaining claims for failure to state a claim, and that the court deny the Chase defendants' motion to dismiss Barnes' rescission claim as moot.

On October 18, 2011, disagreeing with my analysis of the jurisprudence interpreting the provisions of Regulation Z, Judge Brown adopted the foredescribed recommendations only insofar as I recommended that the court dismiss Barnes' construed claim for statutory and actual damages in connection with defendants' purported failure to provide adequate notice of Barnes' right to rescind at or around the time the loan documents were signed, and otherwise denied the

defendants' motions to dismiss with instructions that I consider the issues left unresolved in the foredescribed findings and recommendation, specifically the Chase defendants' motion to dismiss Barnes' rescission claim and LBPS' motion to dismiss to the extent that motion was premised on the theory that LBPS was not an assignee of Barnes' loan and therefore not subject to TILA liability.

On November 3, 2011, the Chase defendants voluntarily withdrew their motion to dismiss. On December 8, 2011, I recommended that LBPS' motion to dismiss be denied to the extent premised on the grounds not addressed in my recommendations of June 10, 2011. On March 6, 2012, Judge Brown adopted that recommendation.

On November 10, 2011, Barnes filed a document styled as his "Second Amended Complaint," by and through which Barnes purported to amend his pleading to add the Federal National Mortgage Association ("Fannie Mae") as an additional defendant and to remove the prayer for statutory damages in connection with the defendants' purported failure to provide adequate notice of Barnes' right to rescind at or around the time the loan documents were signed. On March 19, 2012, I recommended that Barnes' filing of February 10, 2012, be deemed properly filed as Barnes' amended complaint. In addition, I recommended that Barnes' claim for rescission be dismissed, on the basis of intervening Ninth Circuit case law establishing that the claim was time-barred. On June 20, 2012, Judge Brown adopted those recommendations.

Now before the court are Barnes' motion (#129) for summary judgment, the Chase defendants' motion (#132) for summary judgment and LBPS' and Fannie Mae's motion (#135) for summary judgment. I have considered the motions, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Barnes' motion (#129)

Page 3 - FINDINGS AND RECOMMENDATION AND ORDER

should be denied, the Chase defendants' motion (#132) should be granted, and LBPS' and Fannie

Mae's motion (#135) should be granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues

exist for trial.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied,* 116 S.Ct. 1261 (1996).  The substantive law governing a claim or defense

determines whether a fact is material.  *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d

365, 369 (9th Cir. 1998).

In evaluating a motion for summary judgment, the district courts of the United States

must draw all reasonable inferences in favor of the nonmoving party, and may neither make

credibility determinations nor perform any weighing of the evidence.  *See, e.g., Lytle v.*

*Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products,*

*Inc.*, 530 U.S. 133, 150 (2000).  On cross-motions for summary judgment, the court must

consider each motion separately to determine whether either party has met its burden with the

facts construed in the light most favorable to the other.  *See* Fed. R. Civ. P. 56; *see also, e.g.,*

*Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  A court may not

grant summary judgment where the court finds unresolved issues of material fact, even where the

parties allege the absence of any material disputed facts.  *See id.*

## FACTUAL BACKGROUND

I.    **The Parties**

Plaintiff Timothy Barnes is the owner and resident of a residential property located at 590 South Greenwood Road in Independence, Oregon (the "property").

Defendant CHF is a Delaware corporation with its principal place of business in New Jersey.  Defendant CBUSA was at material times a Delaware corporation with its principal place of business in Delaware, and its successor in interest is JP Morgan Chase Bank, N.A..  CBUSA was the "lender" on the note at issue in this action.  CHF appears to have been the original "servicer" of that note on CBUSA's behalf.  The parties all agree that CBUSA was the entity to whom Barnes was required to send his notice of intent to rescind in order to effect his right of rescission during the period when that right was in force and exercisable.

Defendant LBPS is a Delaware corporation with its principal place of business in North Carolina.  It appears that LBPS became the servicer of the note at issue in this action on or around October 1, 2010.

Defendant Fannie Mae became the "creditor" of the note at issue in this action effective November 16, 2010, by way of assignment from CBUSA.

II.    **History of the Parties' Dispute**

On or around November 15, 2007, Barnes closed a loan transaction with CBUSA to refinance the property in Independence, Oregon.  The loan was memorialized in a note dated November 14, 2007, in the amount of $378,250.  Barnes signed a Deed of Trust dated November 15, 2007, for CBUSA's benefit in connection with the loan closing.  At closing, CBUSA's "closing agent" First American Title Company of Oregon provided Barnes with two unsigned

copies of a Notice of Right to Cancel. The two unsigned copies of the Notice of Right to Cancel
stated that the loan closed on November 14, 2007. Specifically, each copy Barnes received at
closing stated as follows:

> You have a legal right under federal law to cancel this transaction, without cost,
> within three (3) business days from whichever of the following events occurs last:
>
> (1) The date of the transaction, which is <u>November 14, 2007</u>; or
>
> (2) The date you received your Truth-In-Lending disclosures; or
>
> (3) The date you received this notice of your right to cancel.
>
> * * *
>
> You may use any written statement that is signed and dated by you and states your
> intention to cancel, or you may use this notice by dating and signing below. . . .
>
> If you cancel by mail or telegram, you must send the notice no later than midnight
> of <u>November 17, 2007 </u>(or midnight of the third business day following the latest
> of the three events listed above). If you send or deliver your written notice to
> cancel some other way, it must be delivered . . . no later than that time.

*Id.* at 32, 33 (underlining original). Other than the specifically recited dates appearing in the two
underlined sections, the language of this notice is in all material respects identical to that of the
model form notice of the right to rescission provided by the Federal Reserve Board. *See* 12
C.F.R. 226, Appx. H-8.

On November 16, 2007, CBUSA assigned the Deed of Trust to the MERS System, solely
as nominee for Fannie Mae.

In June 2010, Barnes requested copies of all his loan documents from First American
Title. In response to Barnes' request, First American Title provided Barnes with copies of the
same Notice of Right to Cancel copies of which were provided to Barnes at closing, but bearing

interlineations and initials purporting to be Barnes' own, as well as a signature purporting to be

Barnes'. The copies received from the title company are interlineated as follows: next to the

printed date "November 14, 2007" (the purported date of the mortgage loan transaction) the date

"11-15-07" and the initials "TB" are handwritten; in addition, the printed date "November 17,

2007" is lined through, with the handwritten number "18" appearing, likewise lined through,

above the printed number "17," and with the handwritten date "11-19-07" and the handwritten

initials "TB" appearing next to it.

On August 4, 2010, Barnes mailed copies of a notice of his intent to rescind the loan

transaction of November 15, 2007, to CHF and to CBUSA, at those entities' addresses of record.

It is undisputed that the copy of the notice sent to CHF was received by CHF, and that the copy

of the notice sent to CBUSA was returned to Barnes unreceived and unopened by the addressee.

Barnes never received any response from either Chase defendant regarding his notice of intent to

rescind.

In September 2010, Barnes received notice from CHF that the right to service the loan

was being transferred from CHF to LBPS effective October 1, 2010. Barnes sent a notice of

intent to rescind to LPBS on October 23, 2010. On January 21, 2011, LPBS wrote to Barnes to

advise him of LBPS' position that his right to rescission had expired, and to invite him to clarify

his concerns with particularity. LBPS' letter also advised Barnes that "[t]he owner of [his] loan

[wa]s [at that time] Federal National Mortgage Association (Fannie Mae)," and that "LBPS [wa]s

servicing [his] loan on behalf of Fannie Mae."

On December 2, 2010, the November 16, 2007, assignment of the Deed of Trust from

CBUSA to the MERS System (solely as nominee for Fannie Mae) was recorded.

Page 7 - FINDINGS AND RECOMMENDATION AND ORDER

## ANALYSIS

### I.    Legal Framework Governing Barnes' Claims

The Truth in Lending Act was enacted in 1968 as Title I of the federal Consumer Credit

Protection Act.  TILA's stated purpose is:

> to assure a meaningful disclosure of credit terms so that the consumer will be able
> to compare more readily the various credit terms available to him and avoid the
> uninformed use of credit, and to protect the consumer against inaccurate and
> unfair credit billing and credit card practices.

15 U.S.C. § 1601(a) (2000).

TILA requires lenders in consumer credit transactions to make clear disclosure of the key

terms of the proposed transactions. *See* 15 U.S.C. § 1601 *et seq.*  TILA provides remedies to

consumers in the form of statutory and actual damages, including for minor or "technical"

violations of TILA. *See Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989); *see also* 15 U.S.C.

§ 1640.  A plaintiff may recover statutory damages for violation of TILA's disclosure

requirements whether or not the plaintiff suffered cognizable actual damages. *See So. Discount*

*Co. of Ga. v. Whitley (In re Whitley)*, 772 F.2d 815, 817 (11th Cir. 1985) (statutory damages must

be imposed regardless of whether actual damages resulted from the violation).  If the creditor is

liable for damages, then the plaintiff may also be awarded reasonable attorney's fees and costs

incurred in connection with bringing an action under TILA. *See* 15 U.S.C. § 1640 (a)(3).  TILA

provides a one year statute of limitations for such civil damages claims. *See* 15 U.S.C. § 1635(f).

Among the various disclosures required of lenders in consumer credit transactions, TILA

(together with its implementing regulations, referred to collectively as "Regulation Z") requires

written disclosure of a consumer's right to rescind any transaction secured by the consumer's

principal dwelling within three days following either the consummation of the transaction or

delivery of rescission forms and other material disclosures. *See* 15 U.S.C. § 1635(a); 12 C.F.R.

226.23(a)(3). Regarding the required rescission notice, Regulation Z specifically provides that:

> a creditor shall deliver two copies of the notice of the right to rescind to each consumer
> entitled to rescind . . . . The notice shall be on a separate document that *identifies the*
> *transaction* and shall clearly and conspicuously disclose the following:

>> (i)      The retention or acquisition of a security interest in the consumer's
>>          principal dwelling.

>> (ii)     The consumer's right to rescind the transaction.

>> (iii)    How to exercise the right to rescind, with a form for that purpose,
>>          designating the address of the creditor's place of business.

>> (iv)     The effects of rescission, as described in paragraph (d) of this section.

>> (v)      The date the rescission period expires.

12 C.F.R. 226.23(b)(1). A written acknowledgment by the consumer of receipt of the notice of

the right to rescind, if any is obtained, "does no more than create a rebuttable presumption of

delivery thereof." 15 U.S.C. § 1635(c).

Ordinarily, "[t]he consumer may exercise the right to rescind until midnight of the third

business day following consummation, delivery of the [rescission] notice [], or delivery of all

material disclosures, whichever occurs last." 12 C.F.R. 226.23(a)(3). However, "if the required

notice of the right to rescind is not delivered, the right to rescind shall expire 3 years after

consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the

property, whichever occurs first." *Id.* Timely provision of a materially defective notice of the

right to rescind is treated as failure to provide the required notice. *See, e.g., Palmer v. Champion*

*Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006), *citing Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 174 (1st

Cir. 2004); *see also, e.g., Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th

Cir. 1986) (failure to fill in expiration date on rescission form, although a purely technical TILA

violation, still entitles consumer to rescind loan for up to three years), *citing Williamson v.*

*Lafferty*, 698 F.2d 767, 768-69 (5th Cir. 1983).

It is the law of this case that if the printed dates on a notice of the right to rescind are

inaccurate, such inaccuracy renders the notice materially defective, regardless of whether the

inaccuracy does not prevent the notice from putting the average consumer on notice of the correct

last date on which the rescission right may be exercised.

Unlike TILA's one-year limitations period for civil damages claims, the three-year period

for TILA rescission claims is an absolute statute of repose. *See McOmie-Gray v. Bank of Am.*

*Home Loans*, 667 F.3d 1325, 1326 (9th Cir. 2012); *Miguel v. Country Funding Corp.*, 309 F.3d

1161, 1164 (9th Cir.2002); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("[Section]

1635(f) completely extinguishes the right of rescission at the end of the 3-year period").

Regarding the consumer's exercise of the right of rescission, 12 C.F.R. § 226.23 provides

as follows:

> To exercise the right to rescind, the consumer shall notify the creditor of the
> rescission by mail, telegram or other means of written communication. **Notice is**
> **considered given when mailed**, when filed for telegraphic transmission or, if sent
> by other means, when delivered to the creditor's designated place of business.

12 C.F.R. 226.23(a)(2) (emphasis supplied). "When a consumer rescinds a transaction, the

security interest giving rise to the right of rescission becomes void and the consumer shall not be

liable for any amount, including any finance charge." 12 C.F.R. 226.23(d)(1). A creditor is

required to "return any money or property that has been given to anyone in connection with the

transaction [to be rescinded] and [to] take any action necessary to reflect the termination of the

security interest" "[w]ithin 20 calendar days after receipt of a [consumer's] notice of rescission."

12 C.F.R. 226.23(d)(2).

Regarding the identity of the party to whom intent to rescind must be mailed, *Miguel v.

Country Funding Corp.*, 309 F.3d 1161 (9th Cir. 2002), is instructive. In *Miguel*, the Ninth

Circuit was presented with a TILA claimant who was entitled to a three-year period within which

to rescind her home mortgage loan. In the last month preceding expiration of the three-year

period, the claimant attempted to exercise her right of rescission, but sent her notice of rescission

to the wrong party (specifically, to the loan servicing agent rather than to the mortgage holder).

On the last day of the three-year period, the claimant filed suit against the servicing agent,

seeking rescission. The court found that notice of intent to rescind mailed to the servicing agent

was inadequate to effect the consumer's rescission right, reasoning as follows:

> Miguel argues that she should have been allotted an additional year in which to
> file suit after the expiration of the three-year period afforded by the statute. While
> Miguel is correct that 15 U.S.C. § 1640(e) provides the borrower one year from
> the refusal of cancellation to file suit [for civil damages], that is not the issue
> before us. Rather, the issue is whether her cancellation was effective even though
> it was not received by the Bank - the creditor - within the three-year statute of
> repose. We hold that it was not. **While the Bank's servicing agent,
> Countrywide, received notice of cancellation within the relevant three-year
> period, no authority supports the proposition that notice to Countrywide
> should suffice for notice to the Bank, and Miguel has presented no evidence
> that the Bank received notice of cancellation within the three-year limitation
> period prescribed by the statute. Therefore, her right to cancellation was
> extinguished as against the Bank.**

*Miguel*, 309 F.3d at 1165 (emphasis supplied).

II.     **Barnes' Constructive Claims for Declaratory Judgment and Injunctive Relief**

By and through his amended complaint, Barnes asserts a claim for this court's declaration

that his notice of rescission as sent either to the Chase defendants or to LBPS is "valid" and had

the effect of terminating any defendant's security interest in the property, and prays for injunctive

relief to enjoin any defendant from pursuing non-judicial foreclosure on the property in

consequence of that rescission. Barnes' claim for declaratory relief and constructive claim for

injunctive relief therefore depend in their entirety on the validity of Barnes' position that he is

entitled to rescission of the loan transaction of November 2007.

As noted above, Barnes' rescission claim has already been dismissed from this action, on

the grounds that (under *McOmie, supra*) Barnes' right to rescission was fully extinguished before

this action was filed.[2] Because neither CBUSA nor Fannie Mae (nor any third-party creditor of

Barnes' mortgage loan) ever effected rescission of Barnes' loan, and because this court lacks

authority as a matter of law to order the loan rescinded, Barnes is not entitled to either the

declaration or the injunctive relief he seeks. Barnes' motion for summary judgment should

therefore be denied as to Barnes' claim for declaratory relief and constructive claim for injunctive

relief, and the Chase defendants' motion and defendants LPBS' and Fannie Mae's motion for

summary judgment should both be granted as to Barnes' claim for declaratory relief and

constructive claim for injunctive relief.

---

[2] Barnes does not dispute any of the foregoing, but argues that *McOmie* was wrongly
decided and, in consequence, that this court should order the loan transaction rescinded and grant
his claims for declaratory and injunctive relief. I note that even if Barnes' critique of *McOmie*
were well-founded, this court would nevertheless be bound to follow its holding as controlling
Ninth Circuit precedent. Barnes' argument that *McOmie* misconstrues the relevant provisions of
Regulation Z therefore provides no grounds for modifying my analysis of the merits of his claims
for declaratory and injunctive relief.

III.     **Barnes' Constructive Claim for Statutory or Actual Damages in Connection with Defendants' Failure to Effect Rescission of the Loan**

By and through his amended complaint, Barnes prays for statutory damages in connection with each defendant's failure to effect rescission of the mortgage loan transaction of November 2007 following his efforts to notify the Chase defendants and LPBS of his intention to exercise his rescission right in (respectively) August and October 2010.  On the basis of this prayer, the court has construed Barnes' amended complaint as alleging a claim arising under 16 U.S.C. § 1640(a) for statutory and actual damages against each defendant for violation of each defendant's purported obligation to effect rescission of the mortgage loan prior to expiration of Barnes' statutory right of rescission.[3]  I address the merits of such constructive claim as alleged against each defendant below.

A.     **Barnes' Constructive Claim for Money Damages Caused by Fannie Mae's Failure to Effect Rescission of the Mortgage Loan**

It is undisputed that Barnes never made any effort to notify Fannie Mae of his intention to exercise his rescission right, and undisputed that Fannie Mae did not at any material time receive actual notice of Barnes' intent to rescind.  Moreover, under *Miguel, supra*, Barnes' notice to other parties of his intent to rescind was ineffective to trigger any TILA obligation on the part of Fannie Mae to effect rescission of the mortgage loan.

---

[3]  At oral argument in connection with the motions now before the court, Barnes indicated that his paramount interest in bringing this action was to effect rescission of his home mortgage loan, and that any interest he might have in pursuing the Section 1640 claim construed on his behalf by the court was strictly secondary to that paramount interest.  Barnes further indicated that, in the event this court adhered to its position that, under *McOmie, supra*, it could not grant Barnes' requested remedy of rescission, his preference was to appeal the court's decision to the Ninth Circuit as soon as possible rather than to engage in lengthy litigation of the constructive Section 1640 claim.  I take note of Barnes' advice to the court, but do not construe his statements as constituting formal abandonment of the constructive Section 1640 claim.

Under 12 C.F.R. 226.23(d)(2), *supra*, Fannie Mae's obligation to rescind Barnes' loan was never triggered. In consequence, Barnes has no right under Section 1640(a) to statutory or actual damages caused by Fannie Mae's failure to effect Barnes' rescission right. Barnes' motion for summary judgment should therefore be denied as to Barnes' constructive claim for statutory and actual damages against Fannie Mae for failing to rescind the loan, and defendants LPBS' and Fannie Mae's motion for summary judgment should be granted as to that constructive claim to the extent it is alleged against Fannie Mae.

**B.**    **Barnes' Constructive Claim for Money Damages Caused by LBPS' and by CHF's Respective Failures to Effect Rescission of the Mortgage Loan**

The undisputed evidence of record establishes that neither LPBS nor CHF was ever either the "lender," the "creditor," or the "owner" of Barnes' mortgage loan. To the contrary, LBPS and CHF each (at different times) acted only as the "servicer" of the loan.

15 U.S.C. § 1641(f)(1) provides that "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1). Moreover, a loan servicer cannot in any event violate TILA by failing to rescind a loan transaction following receipt of a consumer's notice of intent to rescind, because the obligation to rescind is borne by the creditor of the loan, and not by the servicer. *See* 12 C.F.R. § 226.23(d). In consequence, Barnes has no entitlement under Section 1640(a) to statutory or actual damages caused by LPBS' or CHF's failure to effect Barnes' rescission right. Barnes' motion for summary judgment should therefore be denied as to Barnes' constructive claim for statutory and actual damages against LPBS and against CHF for failing to rescind the loan, defendants LPBS' and

Fannie Mae's motion for summary judgment should be granted as to that constructive claim to the extent it is alleged against LPBS, and the Chase defendants' motion for summary judgment should be granted as to that constructive claim to the extent it is alleged against CHF.

### C. Constructive Claim for Money Damages Caused by CBUSA's Failure to Effect Rescission of the Mortgage Loan

As noted above, the parties agree that CBUSA was an appropriate party for Barnes to notify of his intent to effect rescission of his mortgage loan. The undisputed evidence of record tends to establish both that Barnes sent written notice of his intent to rescind to CBUSA at its correct address via certified mail on August 4, 2010, and that CBUSA did not receive Barnes' mailing, which was returned to him unopened without explanation for why it was not delivered. Under such circumstances, there is necessarily a tension between 12 C.F.R. 226.23(a)(2), pursuant to which a consumer's notice of intent to rescind "is considered given *when mailed*" (emphasis supplied), and 12 C.F.R. 226.23(d)(2), pursuant to which the twenty-day period within which a creditor must effect the noticed intent to rescind does not begin to run until "*after receipt* of [the consumer's] notice of rescission" (emphasis supplied). The Ninth Circuit does not appear to have resolved or to have expressly commented upon that tension.

Material to the question of how the tension between the two provisions should be resolved for purposes of Barnes' constructive Section 1640(a) claim is Barnes' actual knowledge that CBUSA did not open and did not receive Barnes' written notice. Absent such knowledge, it could fairly be said that, despite CBUSA's failure to receive the mailed notice, Barnes had done all that he was reasonably required to do under the governing statutory framework to effect his right of rescission. However, Barnes' actual knowledge that his written notice had not been

delivered, considered together with his subsequent failure to take any steps to effect delivery or to make inquiry as to why his mailing had not been received, provides no compelling ground for construing Section 226.23(d)(2) as imposing any greater burden than is suggested by its plain language. By its plain language, Section 226.23(d)(2) obliges a creditor to rescind a loan only after receipt of the loan consumer's notice of intent to rescind. Having never received notice of Barnes' intent to rescind prior to expiration of Barnes' rescission right, CBUSA did not violate Section 226.23(d)(2) when it failed to rescind Barnes' loan.

In consequence, Barnes is not entitled under Section 1640(a) to statutory or actual damages caused by CBUSA's failure to effect rescission of the loan. Barnes' motion for summary judgment should therefore be denied as to Barnes' constructive claim for statutory and actual damages against CBUSA for failing to rescind the loan, and the Chase defendants' motion for summary judgment should be granted as to that constructive claim to the extent it is alleged against CBUSA.

## CONCLUSION

For the reasons set forth above, Barnes' motion (#129) should be denied, the Chase defendants' motion (#132) should be granted, and LBPS' and Fannie Mae's motion (#135) should be granted. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

### NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge.  These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 10th day of April, 2013.

Honorable Paul Papak
United States Magistrate Judge