Timothy Barnes
590 South Greenwood Rd.
Independence, Oregon 97351
503-585-9517

FILED 07 SEP '17 11:35 USDC-ORP

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

TIMOTHY BARNES, an individual    §    Case No.: 11-CV-00142 **Pk**
    PLAINTIFF,    §
        §    **PLAINTIFF'S MEMORANDUM**
-vs-    §    **OF LAW IN SUPPORT OF**
        §    **SUMMARY JUDGMENT**
CHASE HOME FINANCE, LLC;    §
et al.,    §
    DEFENDANTS    §
        §

### TO DEFENDANTS' ATTORNEY(S) OF RECORD AND TO THIS HONORABLE COURT

///

# TABLE OF CONTENTS

Page #

I.      INTRODUCTION AND PROCEDURAL HISTORY ……………...….. 7

II.     BACKGROUND STATEMENT OF FACTS ………………………… 13

III.    ARGUMENT ………………………………………………...……… 16

        A. Standard of Review ……………………………………………… 16

        B. The Ninth Circuit Confirms That Mr. Barnes Effectively *Exercised* Rescission By *Notification* To The Creditor Based On The Statutory And Regulatory Plain Language ……………………………….………. 17

        C. Mr. Barnes' Rescission Notice Was Timely And *Valid* …………...……. 23

        D. The "Effect" Of TILA Rescission *At Law* Mechanics Is Governed By 15 U.S.C. § 1635(b); Reg. Z § 226.23(d) …………………….…..…..… 25

        E. Mr. Barnes Is Entitled To Recover Cost, Actual and Statutory Damages ……………………………………………………………. 32

IV.     Conclusion ……………………………………...……………………… 37

///

## Table of Cases

*Adickes v. S. H. Kress & Co.*,
398 U.S. 144, 157, 90 S. Ct. 1598 (1970) …………………….....…………….. 17

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
475 F.3d 1080, 1088 (9th Cir. 2007) …………………………....…………….. 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986) …………………………………….....………………… 17

*Anderson v. Yungkau*,
329 U.S. 482, 485 (1947) ………………………………….....………………… 29

*Barnes v. Chase Home Finance*,
LLC, 825 F.Supp.2d 1057 (D. Or. 2011) …………………………………… 9

*Beach v. Ocwen Fed. Bank*,
523 U.S. 410, at 412-413 (1998) …………………………………………….. 26

*Belini v. Washington Mut. Bank*,
412 F.3d 17 (1st Cir. 2005) ………………………………….……………… 34

*Bland v. Carone Family Trust*,
2007 WL 951344, at *3 (S.D. Cal. Mar., 19 2007) …………………….…… 33

*Brandrup v. ReconTrust Co. N.A.*,
353 Or. 668, 688, 303 P.3d 301, 304-05, 312 (2013) (en banc) ……………... 11

*Fed. Nat'l Mortg. Ass'n v. United States*,
279 Or. App 411 (Or. Ct. App. 2016) ……………………………..………… 8

*Ford Motor Credit Co. v Milhollin*,
444 U.S. 555, 565, 100 S. Ct. 790 (1980) …………………………..…….. 17

*Gibbons v. Interbank Funding Group*,
208 F.R.D. 278 (N.D. Cal. 2002) ……………………………....………… 33

*Griggs v. E.I. DuPont de Nemours & Company*,

385 F.3d 440, at 446 (4th Cir. 2004) ……………………………..…………. 26

*Hartford Underwriters Ins. Co. v. Union Planters Bank*, N.A.,
    530 U.S. 1, 6 (2000) …………………………………………...…………….. 18, 27

*Hauk v. JP Morgan Chase Bank USA*,
    552 F.3d 1114, 1118 (9th Cir. 2009) ………………………………..…………. 18

*Hong v. Mukasey*,
    518 F.3d 1030, 1034 (9th Cir. 2008) ……………………………...…………… 21

*Household Credit Servs. v. Pfennig*,
    541 U.S. 232, 239 (2004) ………………………………………………….. 22, 29

*In re White*,
    374 BR 257, 263 (Bankr Court D. Kan. 2007) ………………………..…….. 34

*Jama v. Immigration & Customs Enforcement*,
    543 U.S. 335, 346 (2005) ………………………………………………...……… 29

*Jesinoski v. Countrywide Home Loans, Inc.*,
    574 U.S. __, 135 S.Ct. 790 (2015) …………………..…………. passim, 12, 23, 31

*Jackson v. Grant*,
    890 F.2d 118 (9th Cir. 1989) …………………………………………..………. 24

*Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach*,
    523 U. S. 26, 35 (1998) …………………………………………...…………… 26

*Lopez v. Davis*,
    531 U.S. 230, 241 (2001) ……………………………………...……… 27, 29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 586 (1986) ……………………………………...…………. 17

*McOmie-Gray v. Bank of America Home Loans*,
    667 F.3d 1325 (9th Cir. 2012) ……………………………………...……… 11, 22

*Merritt v. Countrywide Financial Corp.*,

759 F.3d 1023, at 1032 (9th Cir. 2014) ……………………………………… 29

*Mourning v. Family Publ'ns Serv., Inc.,*
   411 U.S. 356, 363-366 (1973) ……………………………………....……… 18

*Myers v. Citicorp Mortg. Inc.,* 878 F. Supp. 1553 (M.D. Ala. 1995),
   *aff'd,* 208 F.3d 1011 (11th Cir. 2000) …………………………………..…….. 35

*National Assn. of Home Builders* v. *Defenders of Wildlife,*
   551 U. S. 644, 661–662 (2007) …………………………………………....…… 26

*Neely v. St. Paul Fire and Marine Ins. Co.,*
   584 F.2d 341, 3443 (9th Cir. 1978) …………………………………………… 16

*Omohundro v. United States,*
   300 F3d 1065, 1069 (9th Cir. 2002) …………………………....……… 18

*Paatalo v. JPMorgan Chase Bank,*
   146 F. Supp. 3d 1239 (D. Or. 2015) …………………………………….. 27

*Peterson v. Highland Music, Inc.,*
   140 F.3d 1313, 1322 (9th Cir. 1998) ……………………………….………. 31

*Phelps v. U.S. Life Credit Ins. Co.,*
   984 S.W.2d 425, 427 (Ark. 1999) …………………………………....……… 31

*Rubio v. Capital One Bank,*
   613 F.3d 1195, 1202 (9th Cir. 2010) …………………………….………. 18

*Semar v. Platte Valley Fed. Sav. & Loan Ass'n,*
   791 F.2d 699 (9th Cir 1986) ……………………………....……………… 24

*Sherzer v. Homestar Mortg. Servs.,*
   707 F.3d 255, 264-265 (3d Cir. 2013) …………………..………………. 25, 29

*Sosa v. Fite,*
   498 F.2d 114, 118 (5th Cir. 1974) …………………………………....……… 27

*United States ex rel. Siegel v. Thoman,*

156 U.S. 353, 359-60 (1895) …………………………………………………….. 29

*Williams v. Homestake Mortgage Co.*,
968 F.2d 1137, 1140 (11th Cir. 1992) …………………………………..……………. 29

**Other Authorities**

17B C.J.S. *Contracts* § 647 …………………………………………………….…………… 14

17A Am.Jur.2d *Contracts* § 600 (1991) …………………………………….……………. 31

Antonin Scalia & Bryan Garner, Reading Law:
The Interpretation of Legal Texts 114 (2012) …………………………..……….. 27

*Black's Law Dictionary* 7th Ed. ……………………………………………..………….. 19

*Black's Law Dictionary* 1211-12 (4th ed. 1968) …………………………….………….. 19

Dan B. Dobbs, *Handbook of Remedies* § 4.8 …………………………………….……….. 31

Richard A. Lord, 26 *Williston on Contracts* § 68:28 (4th ed. 2003) ………………..…….. 31

Rohner and Miller, <u>Truth in Lending</u>, ¶ 12.04 [1][b], p 808 ……………………….….. 34

*Webster's Ninth New Collegiate Dictionary* 1989 ……………………………………....………. 19

Plaintiff Timothy Barnes ("Mr. Barnes") submits this Memorandum of Law in support of his Motion for Summary Judgment on the grounds that his *valid* rescission claim provides factual evidence sufficient to constitute Defendants' violation of 15 U.S.C. § 1635(b); Reg. Z § 226.23(d)(1)-(4).[1]  By this renewed motion for judgment, Mr. Barnes suggests that Defendants Chase Home Finance, LLC, ("CHF"), Chase Bank USA, N.A. ("CBUSA"), IBM Lender Business Process Services, Inc., ("IBM"), and Federal National Mortgage Association, ("FNMA"), (collectively "Defendants") failed to comply with rescission *at law* "effects" as required by the federal Truth in Lending Act ("TILA").   At minimum, Mr. Barnes is entitled to rescission, a declaratory judgment, damages and injunctive relief.  Defendants' answer, pleadings, briefs, and all their papers filed in this case fail to provide any evidence that would constitute a viable defense to Mr. Barnes' claim.

## I. INTRODUCTION AND PROCEDURAL HISTORY

This case has had a lengthy and troubled procedural history.  In its' approximately seven years since the timely and *valid* rescission notice was *exercised*, hundreds of pages

---

[1] The Dodd-Frank Wall Street Reform and Consumer Protection Act transferred exclusive authority to interpret and promulgate rules regarding TILA from the Board of Governors of the Federal Reserve System ("FRB") to the Consumer Financial Protection Bureau ("CFPB" or "Bureau") on July 21, 2011. *See* Pub. L. No. 111-243, §§ 1061(b)(1), (d) (2010), *codified at* 12 U.S.C. §§ 5581(b)(1), (d); *Designated Transfer Date*, 75 Fed. Reg. 57,252 (Sept. 20, 2010). The Bureau, exercising this authority, republished Regulation Z in December 2011. *See* 76 Fed. Reg. 79,768-01, 79,803 (Dec. 22, 2011) (codified at 12 C.F.R. § 1026 *et seq.*).  However, for ease of reference, this brief utilizes the codification 12 C.F.R. § 226 *et seq.* ("Reg. Z") because the transaction precedes the republished date and the republication is prospective and not retroactive regarding Reg. Z citations.

of briefing, supporting documents, exhibits, a judicial foreclosure in state court,[2] Defendants devoted an endless unethical game and bottomless war chest against a pro se plaintiff to a central threshold legal issue: Defendants refuse to honor a timely and *valid* rescission notice under TILA simply through intransigence.

This case must end and the state court foreclosure action dismissed. Mr. Barnes brought this action in the District Court against Defendants and ten John Doe defendants on February 4, 2011. In his complaint, he alleged a *material* disclosure violation of TILA and it's implementing Reg. Z, and based this claim on the Defendants' failure to honor and respond to his notice of intent to *exercise* his contractual and statutory right to rescind. This District Court construed Mr. Barnes's complaint as alleging claims for: (1) rescission of the mortgage loan, (2) a declaratory judgment that the defendants had no valid security interest in the subject property, (3) statutory and actual damages in connection with defendants' alleged failure to provide adequate notice content of his right to rescind at the time the loan documents were

---

[2] While this case was pending on appeal, FNMA filed a judicial foreclosure on June 6, 2014, Case No.: 14CV06590 in the circuit court for the state of Oregon, Polk County. The claim was dismissed based on another action pending, ORCP 21 A. FNMA appealed, Case No.: A160130. On July 7, 2016, the Court of Appeals for the state of Oregon vacated the judgment of dismissal and remanded for further proceedings, *Fed. Nat'l Mortg. Ass'n v. United States*, 279 Or. App 411 (Or. Ct. App. 2016). The Oregon appeals court concluded that "[W]here, as here, the plaintiff is a defendant in another pending action, ORCP 21 A(3) does not authorize dismissal of the plaintiff's claim unless it either was required to be asserted as a counterclaim or necessarily will be adjudicated in the other action." *Id.*, at 415. On remand, the parties briefed the circuit court, Mr. Barnes again briefed dismissal consistent the appeals court instructions but the circuit court abated the foreclosure action pending the outcome of the Ninth Circuit's opinion here.

signed, (4) statutory and actual damages in connection with the failure of CHF and CBUSA to *effect* rescission of the mortgage loan, and (5) injunctive relief to enjoin the Defendants from initiating or prosecuting a foreclosure proceeding on his property, from recording any deeds or mortgages regarding the property, or from taking any steps to deprive him of his ownership rights in the property.

On June 10, 2011, the Magistrate Judge, considering motions to dismiss filed by the Defendants, recommended to the District Court that the court dismiss Mr. Barnes's rescission claim for lack of subject matter jurisdiction on the ground that it was untimely, and that the court dismiss his remaining claims for failure to state a claim. The Magistrate Judge also recommended that the District Court deny the motion to dismiss of CHF and CBUSA as moot.

The District Court, in a published order dated October 18, 2011,[3] rejected the Magistrate Judge's analysis except insofar as it recommended dismissal of Mr. Barnes's claim for damages in connection with Defendants' failure to provide adequate notice of the right to rescind arising out of the loan origination documents as barred by applicable statute of limitations. In all other respects, the District Court denied the Defendants' motions to dismiss and instructed the Magistrate Judge to consider the remaining issues. Shortly thereafter, CHF and CBUSA voluntarily withdrew their

---

[3] See *Barnes v. Chase Home Finance, LLC*, 825 F.Supp.2d 1057 (D. Or. 2011) or 2011 WL 4950111 (D. Or. Oct. 18, 2011)

motion to dismiss, and the Magistrate Judge recommended that IBM's motion to dismiss be denied (a recommendation the District Court adopted on March 6, 2012).

On November 16, 2011, Mr. Barnes filed an Amended Complaint, in which he amended his complaint to add FNMA as an additional defendant and to remove the claim for statutory damages dismissed by the District Court on October 18, 2011—an amendment deemed effective by the District Court but titled as "Second Amended Complaint" due to Mr. Barnes' clerical mistitling when filed.    The Defendants answered the claim and all declined to counterclaim requesting judicial modification as textually required by § 1635(b); Reg. Z § 226.23(d)(4).  They waived their avenue for judicial review, or they simply had no actionable cause, or lacked standing altogether.

During the discovery phase FNMA failed to produce documentary evidence to support their pleadings or that a transfer or valid assignment of the Note to FNMA occurred, no proof of purchase and no contractual agreement with IBM was filed as evidence or disclosed.    Mr. Barnes obtained an unattached allonge demonstrating improper *negotiation* and submitted it to the District Court to prove assignee liability of CHF.[4]  But Defendants deceptively omitted filing the allonge in this case and argued

---

[4] The Code's requirement that an indorsement be "firmly affixed" to its instrument is a settled feature of commercial law, adopted verbatim by every American state, the District of Columbia, and the Virgin Islands.  *See* 5 R. Anderson, *Uniform Commercial Code* § 3-202:2, at 416 (3d ed. 1984) (citing codifications).  When interpreting the attachment requirement, the courts "have been of one mind" that the lack of an indorsing signature on the instrument itself, or on a sheet "firmly affixed" to the instrument, is fatal to holdership.      However, actual "[n]egotiation takes effect only when the

here and later on appeal that the unattached allonge was not present in their file. The evidentiary exhibits presented in this case confirms that a spurious Corporate Assignment was recorded after these parties received the rescission notice and it assigns the security instrument to MERS as nominee of FNMA, not the Note.[5]

After the Ninth Circuit Court decided *McOmie-Gray v. Bank of America Home Loans*, 667 F.3d 1325 (9th Cir. 2012) on February 8, 2012, contradicting the District Court's prior analysis of the Magistrate Judge's Findings and Recommendation, the Magistrate Judge renewed his recommendation that Mr. Barnes's rescission claim be dismissed against all defendants for failure to state a claim upon which relief can be granted. The District Court adopted that recommendation on June 20, 2012.

The parties filed cross motions for summary judgment on the remaining claims for declaratory and injunctive relief, and for statutory damages. The Magistrate Judge concluded that Mr. Barnes's claims for declaratory and injunctive relief "depend[ed] in

---

indorsement is made and until that time there is no presumption that the transferee is the owner."
U.C.C. § 3-201(3)

[5] An additional spurious security instrument assignment was produced in the state court foreclosure action dated March 16, 2011 where IBM requests MERS to assign the security instrument to FNMA, not the Note, and neither IBM nor MERS are beneficiaries of the Note. "The assignment of a mortgage independent of the debt which it is given to secure, is an unmeaning ceremony." *United States Nat. Bank v. Holton*, 99 Or. 419, 429, 195 P. 823 (1921). "[T]hat concern underlies the standard doctrine in judicial foreclosure proceedings that the foreclosing party must provide *proof* that it has the power to enforce the note." *Brandrup v. ReconTrust Co. N.A.*, 353 Or. 668, 688, 303 P.3d 301, 304-05, 312 (2013) (en banc) (also holding that MERS was not the "beneficiary" of a deed of trust under the Oregon Trust Deed Act absent conveyance to MERS of the beneficial right to repayment, and that MERS could not hold or transfer legal title to the deed as the lender's nominee).

their entirety" on the dismissed rescission claim. With respect to Mr. Barnes's claims for damages based on the defendants' failure to rescind, the Magistrate Judge recommended summary judgment be granted in favor of defendants because he concluded that FNMA's obligation to rescind Mr. Barnes's loan was never triggered, that CHF and IBM could not—as servicers—have an obligation to rescind under TILA, even though he ignored Mr. Barnes' allonge exhibit proving that the obligation was assigned to CHF, and that CBUSA did not violate TILA because it did not receive the notice of rescission. The District Court adopted the Magistrate Judge's findings and recommendation on July 8, 2013, and judgment of dismissal with prejudice was entered.

Mr. Barnes timely appealed to the Ninth Circuit, Case No.: 13-35716. The parties fully briefed the appeal, and supplemental briefing was added post Supreme Court determination of *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. __, 135 S.Ct. 790 (2015). On Aug. 8, 2017, the Ninth Circuit vacated the grant of summary judgment in favor of Defendants because they failed to effect TILA rescission procedures when notice of rescission was properly given. ("Panel Op.")

## II. BACKGROUND STATEMENT OF FACTS

In the year 2007, Mr. Barnes needed to resolve and settle a divorce. His ex-wife had incurred substantial consumer financial debt and demanded a cash payoff to make the divorce final. Without any other financial resources, and in despair, he cashed out equity in his home, paid her credit card debts and settled. The result was a toxic mortgage loan Transaction (the "Transaction") with a principal sum of $378,250.00 secured by a Deed of Trust covering real property described therein, then and now Mr. Barnes' *principal dwelling*. The property has been Mr. Barnes' home since 1990.

On the exact date of November 15, 2007, the federally related mortgage transaction at the root of this case was consummated naming CBUSA as the payee. At the closing Mr. Barnes was provided with various documents relevant in this case and identified in his claim as Exhibit 1. Specifically, the Notices of Right to Cancel (or "NORTC") provided to him in connection with this Transaction is clear and convincing evidence that the date rescission rights terminate is inaccurate and contrary to Reg. Z § 226.23(b)(1)(v); (see also Doc. 130-1, Exhibit A compared to Exhibit B). Since the Notices of Right to Cancel are defective, a *material* disclosure, Mr. Barnes' right to rescind is extended from three days to three years under 15 U.S.C. § 1635(f); Reg. Z § 226.23(a)(3).

On August 4, 2010 and within 3 years, Mr. Barnes mailed a *valid* written Rescission Notices to CBUSA and CHF, (Doc. 130-1, Exhibit C), as required by § 1635(a) and

the contract terms. Mr. Barnes stops making payments when he rescinded.[6] The Rescission Notice surrenders the value of the Property, requests a full accounting, and offers tender restoring all these parties to the *status quo ante*.

CHF, the party whom Mr. Barnes was directed to make his monthly payments, received the notice (Doc. 130-1, Exhibit C certified mail receipt) and ignored it. CHF also failed to provide requested information about the creditor under § 1641(f)(2) ("Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."), nor have they argued or disclosed evidence otherwise. The post office returns the CBUSA certified mail and rescission notice unopened allegedly because they declined to receive mail from Mr. Barnes at the address designated in the contract terms and indicated on the Notices of Right to Cancel.

Thereafter, Mr. Barnes receives a letter from CHF dated September 13, 2010 describing a Servicer transfer to IBM, (Doc. 130-1, Exhibit D). The CHF letter fails to identify the true owner under § 1641(f)(2), fails to accept the tender offer, and fails to comply with TILA mandatory rescission provisions under 15 U.S.C. § 1635(b); Reg. Z § 226.23(d)(1)-(4). CBUSA later allegedly assigns only the Deed of Trust

---

[6] *See* 17B C.J.S. *Contracts* § 647 ("An election to rescind the contract must be made by the party who has the right to rescind, and once the election is made, that party must adhere to it")

according to a Corporate Assignment on November 16, 2010 to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for FNMA.

Mr. Barnes received letters from IBM dated Oct, 11, 2010, Oct. 14, 2010, and Oct. 17, 2010 stating that IBM has the right to collect payments, the transfer of servicing and stating the subject Transaction is currently in default, (Doc. 130-1, Exhibit E). Mr. Barnes sends a dispute notice to IBM dated Oct. 23, 2010 informing IBM that he had rescinded, describing the grounds for his rescission, provided IBM with enclosures of the certified mail receipts, and the actual rescission notices sent to CBUSA and CHF describing the defective *material* Notices of Right to Cancel, (Doc. 130-1, Exhibit F).

Subsequent thereto, a letter dated January 21, 2011 from IBM was received stating an acknowledgment of Mr. Barnes' Oct. 23, 2010 dispute letter, (Doc. 130-1, Exhibit G). This IBM letter, indentifies FNMA as the owner of the Transaction and states: "We have been engaged by Fannie Mae to collect payments and respond to correspondence about its loans *** We do not believe that rescission would be appropriate for your loan." Who gave IBM the authority to make such a statement? Thus, IBM has effectively acknowledged that they are acting as an agent responding for FNMA and the subject Transaction. The delivery of Mr. Barnes' dispute notice with its rescission notice enclosure to IBM constituted delivery to the creditor or

assignee FNMA. Mr. Barnes reasonably relied upon IBM's conduct as consent from FNMA to have IBM act for FNMA on this rescission matter.

Each of the Defendants' responses, communications and omissions intentionally imposed on Mr. Barnes contradict the requirements set forth by 15 U.S.C. § 1635(b); Reg. Z § 226.23(d)(1) through (4), refuse tender, and violate § 1641(f)(2). Hence, Mr. Barnes is entitled to one year to file suit as the plain language states in 15 U.S.C. § 1640(e) for civil liability under 15 U.S.C. § 1640(a), and he did.

## III.    ARGUMENT

### A. Standard of Review

Summary judgment is proper when the trial court can decide the case as a matter of pure law and does not need to weigh credibility or make factual inferences. *Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 3443 (9th Cir. 1978). When the historical facts controlling the application the law are undisputed, the application raises a question of law for the court to decide, thereby making summary judgment appropriate in such cases. *See Delbon Radiology v. Turlock Diagnostic Ctr.* 839 F. Supp. 1388, 1391 (ED CA 1993). Pursuant to Fed. R. Civ. P. 56 (c), summary judgment is proper only if there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The nonmoving party is entitled to a view of the evidence in the light most favorable to its position. "When ruling on a summary judgment motion, a court must view the evidence in the light most favorable

to the nonmoving party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct.

1598 (1970).  *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> "Material" facts are those which, under applicable substantive law, *may affect the outcome* of the case: '(T)he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  [ ] [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.'
> In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248 (emphasis added).  If the opposition evidence is merely

"colorable" or "not-significantly probative," summary judgment may be granted.

*Anderson,* 477 U.S. at 249–250. To defeat a motion for summary judgment, the non-

moving party must advance more than a "scintilla of evidence," *Anderson,* 477 U.S. at

252, and demonstrate more than "some metaphysical doubt as to the material fact."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## B. The Ninth Circuit Confirms That Mr. Barnes Effectively *Exercised* Rescission By *Notification* To The Creditor Based On The Statutory And Regulatory Plain Language

This case returns here to the District Court because the Ninth Circuit resolved an

issue of statutory interpretation and deferred its analysis to the CFPB interpretation of

Reg. Z.[7] Mr. Barnes begins with a brief overview of the relevant provisions.

---

[7] The Supreme Court has made clear for several decades that "caution requires attentiveness to the views of the administrative entity appointed to apply and enforce a statute," and "deference is especially appropriate in the process of interpreting [TILA] and Reg. Z" unless such deference

See *Hartford Underwriters Ins. Co. v. Union Planters Bank*, N.A., 530 U.S. 1, 6 (2000) ("We begin with the understanding that Congress says in a statute what it means and means in a statute what it says there.").

The TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit . . . ." 15 U.S.C. § 1601(a); see *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363-366 (1973); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009)(quoting 15 U.S.C. § 1601). Consistent with that purpose, courts must construe the Act's provisions liberally in favor of the consumer; *Rubio v. Capital One Bank*, 613 F.3d 1195, 1202 (9th Cir. 2010).

TILA also gives borrowers the "right to rescind" some kinds of consumer-credit transactions. The rescission right applies to certain transactions in which a creditor takes a security interest in an obligor's "principal dwelling" and in return provides money or property that the obligor uses for non-business purposes; 15 U.S.C. § 1635(a). The right does not apply to transactions that finance the acquisition or initial construction of a home; *see* 15 U.S.C. § 1635(e).

---

would lead to "demonstrable irrational" results. *Ford Motor Credit Co. v Milhollin*, 444 U.S. 555, 565, 100 S. Ct. 790 (1980); *see also Omohundro v. United States*, 300 F3d 1065, 1069 (9th Cir. 2002)(Supreme Court decision requiring deference to agency interpretation found in informal rule undermined prior panel precedent that did not consider agency interpretation in reaching its decision).

Section 1635(a) and Reg. Z specifies that Mr. Barnes *exercise* his right to rescind by providing written *notice* as follows:

(a) Disclosure of obligor's right to rescind

"Except as otherwise provided in this section, … the obligor shall have the right to rescind the transaction… by *notifying* the creditor, in accordance with regulations of the Board, of his intention to do so…"

Creditors must "provide, in accordance with regulations * * * , appropriate forms for the obligor to *exercise* his right to rescind any transaction subject to this section." *Ibid.* Regulation Z requires Mr. Barnes, within the timeframe provided by § 1635(f), "[t]o *exercise* the right to rescind, the consumer shall *notify* the creditor of the rescission by mail, telegram or other means of written communication. *Notice* is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business." Reg. Z § 226.23(a)(2); see 12 C.F.R. Pt. 226, Apps. H-8, H-9 (model forms for *exercising* rescission right).

> [1]ex-er-cise, n, 1c: "the act or an instance of carrying out the terms of an agreement (as an option)," *Webster's Ninth New Collegiate Dictionary* 1989
>
> exercise, *vb.,* 2. "To implement the terms of; to execute," *Black's Law Dictionary* 7th Ed.

"When determining the plain meaning of language, we may consult dictionary definitions." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1088 (9th Cir. 2007). Legal dictionaries also confirm the ordinary meaning of "notify" and "notice." *See, e.g., Black's Law Dictionary* 1211-12 (4th ed. 1968)(defining "notify" as "[t]o give

notice to; to inform by words or writing, in person or by message, or by any signs which are understood; to make known"); *Id.* at 1210 (defining "notice" as "[i]nformation; the result of observation, whether by the senses or the mind; knowledge of the existence of a fact or state of affairs; the means of knowledge").

Mr. Barnes mails his Rescission Notice to the address where he makes payments, i.e. CHF, and to the CBUSA address disclosed on the contract and NORTC. Thus, Mr. Barnes executed or carried out the terms or implemented the terms of the agreement by sending *notice*. He has achieved his contractual and statutory *exercise* under TILA sufficient to effectuate rescission by *notice*.

The Defendants were able to persuade the District Court and argued on appeal that Mr. Barnes' rescission notice was insufficiently delivered to CBUSA to trigger their duty to lawfully respond or that CBUSA "never received notice of Barnes intent to rescind prior to expiration of [his] rescission right." Not only is this untrue, it was error. Here, the District Court acknowledged that notice of rescission "is considered given when mailed," quoting Reg. Z § 226.23(a)(2) but reliance on the Defendants argument that it caused "tension" with Reg. Z § 226.23(d)(2) describing the 20-day period to effect rescission "after receipt of [the consumer's] notice of rescission," was rejected by the Ninth Circuit panel and for good reason. In 2004, the Federal Reserve Board amended the *Official Staff Commentary* § 226.23(a)(2)-1 to address the question whether delivery of the rescission notice to a servicer is effective to the creditor and

here deference is owed to an agency's interpretation of its own regulations. See *Hong v. Mukasey*, 518 F.3d 1030, 1034 (9th Cir. 2008).

Echoing this same *Commentary* § 226.23(a)(2)-1 to resolve this "tension" the Ninth Circuit deferred its analysis to a perceived ambiguity by holding: "[S]pecifically, [the] Consumer Financial Protection Bureau (CFPB) Official Staff Commentary to Regulation Z provides: 'Where the creditor fails to provide the consumer with a designated address for sending the notification of rescission, delivery of the notification to the person or address to which the consumer has been directed to send payments constitutes delivery to the creditor or assignee.' 12 C.F.R. § 226, Supp. I, para. 23(a)(2); Truth in Lending, 69 Fed. Reg. 16,769-03, 16,771 (Mar. 31, 2004) *** Barnes's letter to CHF therefore provided sufficient notice to CBUSA that he was exercising his right to rescind." (Panel Op. p3-4).[8]

The same is true regarding the applicable notice to IBM within the 3-year period under § 1635(f). It is true because a copy of the rescission notice was included as an enclosure when Mr. Barnes effectively sent a dispute notice to IBM on Oct. 23, 2010. An examination of the Rescission Notice itself specifically informs Defendants that:

> "It is imperative that you forward this notice to all interested parties. All communications or omissions will be considered intentional on your part and made a part of and incorporated into any litigation arising from this matter."

---

[8] The CFPB is "the primary source for interpretation and application of truth-in-lending law." *Household Credit Servs. v. Pfennig*, 541 U.S. 232, 238 (2004)

IBM having received the same Rescission Notice as an enclosure was informed in the

Oct. 23, 2010 dispute notice that Mr. Barnes had rescinded:

> "Your demand letters dated October 14, 2010 and October 18, 2010 are in
> violation of federal law and are not in conformity with the regulations of
> what a creditor or assignee of a loan may do after a loan has been duly
> rescinded."

The logical reasoning behind this *notification* content, defined supra, is because truly

disreputable creditors may avoid signing for their certified mail as here, then invent

legal theories without any basis in law, or "pass off" the obligation to another alleged

creditor, or would take advantage of uniformed consumers by intentionally delaying

TILA rescission compliance beyond the 3-year period.[9]  This type of conduct would

render § 1641(c) meaningless.

> 15 U.S.C. § 1641(c) *Right of rescission by consumer unaffected.*

> Any consumer who has the right to rescind a transaction under section
> 1635 of this title may rescind the transaction as against any assignee of
> the obligation.

This court may recall Defendants subterfuge by refusing contractual document

production implicating their contradictory court briefing.  Even so, if CHF failed to

*notify* CBUSA, or IBM failed to send the *notice* to FNMA, any cognizable injury would

be self-inflicted.  "Because notice of rescission was properly given, we vacate the grant

of [Defendants'] summary judgment on Barnes' claims for rescission and failure to

---

[9] *See, e.g., McOmie–Gray v. Bank of America Home Loans,* 667 F.3d 1325, 1329–30 (9th Cir.2012) (bank
claimed it could and would "toll" the rescission period during negotiations, then used the statute of
repose to extinguish the claim once three years had passed from closing the loan)

effect rescission *** Any claim against CBUSA can be brought against Fannie Mae as an assignee of CBUSA's interest, and should not have been be dismissed." (Panel Op. p2-3, fn2)

### C. Mr. Barnes' Rescission Notice Was Timely And *Valid*

Section 1635(f) defines the period of time during which Mr. Barnes is permitted to rescind this Transaction if he did not receive correct disclosures required by TILA. It provides that the "right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first[.]" The answer to the question of *how* Mr. Barnes rescinds is supplied by § 1635(a) and (b) and Reg. Z. See *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. __, 135 S.Ct. 790 (2015) (a borrower exercising his right to rescind under the Act need only provide written notice [ ] within the 3-year period). Under TILA, the rescission notice is effective as of the notice date or not at all; the subsequent litigation is simply to determine whether the Defendants' refusal to honor the rescission was justified, and here it was not.

The subject Transaction closed on the exact date of November 15, 2007 (see Doc. 138-1, p3 and 4, signature pages dated 11-15-07, and Doc. 138-2, p15, notarized "on this 15 Day of November 2007, personally appeared the above named Timothy Barnes") and Mr. Barnes' Rescission Notice was mailed August 4, 2010 (**Doc. 130-1, Exhibit C**). Based on the evidence of record, the notice was timely and this fact is

undisputed.

The next question is whether the notice was *valid*; that is whether the lender failed to provide a required disclosure accurately and correctly under TILA. *See* 15 U.S.C. § 1602(u); Reg. Z § 226.23(a)(3) n.48, and two (2) copies of the Notice of Right to Cancel, 15 U.S.C. § 1635(a); Reg. Z § 226.23(b). In this case, the Notices of Right to Cancel provided to him in connection with this Transaction is clear and convincing evidence that the date rescission rights terminate is inaccurate and contrary to the content requirement under Reg. Z § 226.23(b)(1)(v), a *material* disclosure. *See e.g. Jackson v. Grant*, 890 F.2d 118 (9th Cir. 1989)(the rescission notice tying rescission expiration date to that contract was erroneous, and borrower therefore had the three year extended right to rescind the loan); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699 (9th Cir 1986) (rescission notice which omitted the expiration date, although it stated that the right expired three business days after July 16, was violation). Defendants have already conceded that the NORTC is defective in the their summary judgment briefs and on appeal to the Ninth Circuit. Though other circuits may have different views of inaccurately completed model forms, the Ninth Circuit's precedents control the outcome of this case.

Thus, if an obligor who has sent a rescission notice is involved in a suit against a creditor that has ignored or declined to recognize the validity of the notice, the court must determine whether the notice was valid and enforceable when it was sent, and it

was. If the District Court now concludes that Mr. Barnes' notice was timely and otherwise valid, it will hold that the "right of rescission" was *exercised* as of the notice date, and the court can consider whether there is some special reason why § 1635(b) procedures should not "apply," see, e.g., *Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255, 264-265 (3d Cir. 2013)(explaining that obligor who has sent a timely notice of rescission retains "the right to the return of his property and to clear title—the rights flowing from rescission"). "Barnes' claim for damages, a declaratory judgment, and injunctive relief for failure to effect rescission following timely notice of intent to rescind against CBUSA and Fannie Mae were thus improperly dismissed on summary judgment by the district court." (Panel Op. p4-5)

## D. The "Effect" Of TILA Rescission *At Law* Mechanics Is Governed By 15 U.S.C. § 1635(b); Reg. Z § 226.23(d)

The timely *exercise* of a *valid* rescission is governed by the statute and regulation. Rescission *at law* itself is the result of an action already *achieved* by Mr. Barnes. The purpose of litigation following the unilateral rescission of a contract is not to ask the court to cancel the contract, because "[r]escission at law is accomplished without the aid of a court," and "is completed when, having grounds justifying rescission, one party to a contract notifies the other party that he intends to rescind the contract and return that which he received under the contract." *Griggs v. E.I. DuPont de Nemours & Company*, 385 F.3d 440, at 446 (4th Cir. 2004). That is the view of the CFPB's

multiple amicus briefs filed around the country. Much of the dispute in the present case involves § 1635(b), which provides a default process for rescission of the loan. Pursuant to § 1635(b), Mr. Barnes' *valid exercise* of the rescission right triggers a series of steps set forth in detail, a simple sequential, three-step process through which the transaction is unwound. The legality of this *effect* does not turn on a guessing game.

First, "[w]hen an obligor exercises his right to rescind under [Section 1635(a)], he is not liable for any finance or other charge, and any security interest given by the obligor * * * becomes void upon such a rescission." 15 U.S.C. 1635(b). This is the "effect" of a *valid* rescission timely *exercised*; it is not a procedure subject to judicial modification. The Transaction is canceled and the security interest becomes void.

Second, "[w]ithin 20 days after receipt of a notice of rescission, the creditor **shall** return to the obligor any money or property given as earnest money, downpayment, or otherwise, and **shall** take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." *Ibid.*; See also *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, at 412-413 (1998). Where the statute's language is plain, "the sole function of the courts . . . is to enforce it according to its terms." *Hartford Underwriters*, 530 U.S. at 6. Congress' intent could not be clearer and the Supreme Court instructs that "the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." *Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach*, 523 U. S. 26, 35 (1998); *see also National Assn. of Home Builders* v. *Defenders of*

*Wildlife*, 551 U. S. 644, 661–662 (2007)(same); *Lopez v. Davis*, 531 U.S. 230, 241 (2001)(same).[10] "[A]t this juncture, the creditor incurs several responsibilities. Within [twenty-days] after receipt of a rescission notice, the creditor is obligated, first, to return any downpayment or earnest money and, second, to take any appropriate steps to reflect termination of the security interest." *Sosa v. Fite*, 498 F.2d 114, 118 (5th Cir. 1974)(alteration in original: 10 days to 20 days).

Third, "[u]pon the performance of the creditor's obligations under this section, the obligor shall tender" any property the creditor has previously delivered (or "its reasonable value"). *Ibid.* Alternatively, the lender can sue and contest the borrower's right to rescind. *See Paatalo v. JPMorgan Chase Bank*, 146 F. Supp. 3d 1239 (D. Or. 2015)(discussing rescission under TILA, *Jesinoski*, and lender's options).

So the "effect" applies without judicial review as long as the notice was timely and *valid* (the conditional 3-year rescission right); but the procedures apply except when a court modifies by court order. The same "effect" applies to the 3-day unconditional rescission right. The Defendants must request the District Court in every rescission case to modify the procedures. Here they did not. They waived it. Because judges are not legislators, there would be no reason for a federal court to deviate from the statute's plain language (except to rescue Defendants' waiver).

---

[10] Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 114 (2012) ("[W]hen the word *shall* can reasonably read as mandatory, it ought to be so read.").

Reg. Z § 226.23(d) establishes basic priority rules for determining the procedural order in which the transaction is unwound. This section makes clear the fundamental 3-step regulatory requirement for achieving the statutory mandate so plainly stated in section 1635(b). A district court does not have the power to alter the substantive rights of rescission *at law*, only the defined procedures. The regulation makes clear the "effects" prescription stated in *Jesinoski* where Justice Scalia used the exact same term.

Reg. Z § 226.23(d) *Effects of rescission* states:

(1) When a consumer rescinds a *transaction* the security interest giving rise to the right of rescission becomes *void* and the consumer **shall** not be liable for *any amount*, including finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor **shall** return any money or property that has been given to anyone in connection with the transaction and **shall** take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section *may* be modified by court order.

Paragraph (d)(1) plainly states the "effect" of a *valid* rescission *exercised*, it is not a procedure subject to judicial modification, i.e., (d)(2) and (3). And here, Reg. Z, which interprets this TILA section, must be given "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Household Credit Servs. v. Pfennig*, 541 U.S. 232, 239 (2004). The *effects* of rescission of the Transaction (both the Note and Deed of Trust) under Reg. Z § 226.23(d) are unambiguous providing a clear statement of the law. And where—as here—"shall" is used in juxtaposition to the word "may," the "shall" is clearly mandatory. See, e.g., *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 346 (2005); *Lopez*, 531 U.S. at 241; *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947); *United States ex rel. Siegel v. Thoman*, 156 U.S. 353, 359-60 (1895).

None of the responses, pleadings, or evidence of record from Defendants complied with the mandatory rescission *procedures* prescribed by § 1635(b); Reg. Z § 226.23(d)(1)-(4) within 20-days receipt of a *valid* notice. Since Defendants failed to raise any factual or tenable defenses within 20-days receipt of a *valid* request to rescind, and failed to request a court to modify the statutory procedures, by default, the creditors' interest in the property is "automatically negated regardless of its status and whether or not it was recorded or perfected." *Official Staff Commentary* § 226.23(d)(1)-1. *See Merritt v. Countrywide Financial Corp.*, 759 F.3d 1023, at 1032 (9th Cir. 2014)("[i]f a creditor acquiesces at the outset in the notice of rescission, 'then the transaction [is] rescinded automatically, thereby causing the security interests to

become void[.]'")(internal citation omitted); See *Sherzer*, 707 F.3d at 258 ("[S]ection 1635(b) [ ] suggests that rescission occurs automatically when the obligor validly exercises his right to rescind"); *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992)("[U]nder § 1635(b), however, all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first. *** Furthermore, because rescission is such a painless remedy under the statute [placing all burdens on the creditor], it acts as an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements.").

Again, rescission *at law* under TILA is the result of an action already taken without the aid of a court. This is also the position of the federal agency with exclusive authority over TILA, the CFPB, who briefed and oral argued this same point now confirmed by the Supreme Court in *Jesinoski v. Countrywide Home Loans,* 135 S.Ct. 790, 190 L. Ed. 2d 650, 574 U.S. ___ (2015). The unanimous *Jesinoski* Court's opinion stated in part that:

> "Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . *by notifying the creditor, in accordance with the regulations of the Board, of his intentions to do so.'* The language leaves no doubt that rescission is *effected* when the borrower notifies the creditor of his intentions to rescind.
>
> * * *
>
> Respondents do not dispute that § 1635(a) requires only written notice of rescission. *** Section 1635(a) *nowhere suggests a distinction between disputed and*

*undisputed rescissions*, much less that a lawsuit would be required for the latter."
*Jesinoski,* 135 S. Ct. at 792. (emphasis added).

The Ninth Circuit here relied upon the *Jesinoski* court making clear that "[R]escission is *effected* [by Mr. Barnes' written notice to the lender that he intended to rescind], (Panel Op. p3, citing *Jesinoski,* at 792). Plainly stated, the remedy of "rescission" is an avoidance of a transaction, the extinguishment of an agreement such that in contemplation of law, it never existed. 17A Am.Jur.2d *Contracts* § 600 (1991). It is a remedial 'right' to which an aggrieved party is entitled with or without resort to a tribunal. The advantage of *rescission at law* as an alternative to enforcement of a contract, outweigh its costs in terms of contractual instability and potential forfeiture. Once notice is given, "the court merely grants restitution after the party seeking it has achieved rescission by its own acts." *Phelps v. U.S. Life Credit Ins. Co.,* 984 S.W.2d 425, 427 (Ark. 1999). *Accord Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1322 (9th Cir. 1998)(after a party "has effected the rescission" by notice, "subsequent judicial proceedings are for the purpose of confirming and enforcing that rescission");[11] Dan B. Dobbs, *Handbook of Remedies* § 4.8 ("[T]he plaintiff effects the

---

[11] *Omlid v. Sweeney,* 484 N.W.2d 486, 490 & n.3 (N.D. 1992) (a suit following rescission at law "is essentially an action for restitution"); *Jones v. Bohn,* 311 N.W.2d 211, 213 (S.D. 1981) (a party can "enforce his rights" arising from a unilateral rescission that "has already been accomplished"); *Brown v. Techdata Corp., Inc.,* 234 S.E.2d 787, 792 (Ga. 1977) (a party who "rescinds the contract himself" may "then bring an action at law for money damages (more accurately termed restitution) or for recovery of [his] property"); *E.T.C. Corp. v. Title Guarantee & Trust Co.,* 271 N.Y. 124, 128 (1936)

rescission and the court gives a judgment for restitution if that is needed."); 3 Henry Campbell Black, A Treatise on the Rescission of Contracts and Cancellation of Written Instruments §§ 577-578 (2d ed. 1929).

In other words, either party to a contract may, if there is lawful reason therefor, rescind it, thereby (subject to some limitations) destroying it from the beginning, or may denounce and repudiate it, thereby destroying it for the future. In either case this is his absolute right, not because some court may subsequently approve, but because the facts existed which gave him the right. The court's role is to determine whether Mr. Barnes already rescinded, and he did. *See* Richard A. Lord, 26 *Williston on Contracts* § 68:28 (4th ed. 2003). Defendants have already conceded on appeal and here in this case that grounds for rescission, a *material* disclosure violation occurred. Indeed these Defendants utterly failed to comply with these provisions, and judgment against them is proper.

### E. Mr. Barnes Is Entitled To Recover Cost, Actual and Statutory Damages

Section 130(a) permits a successful TILA plaintiff to recover cost, actual and statutory damages, see § 1640 *Civil liability* [TILA § 130]:

> (a) "Individual or class action for damages; amount of award; factors determining amount of award
> Except as otherwise provided in this section, any creditor who fails to comply with *any* requirement imposed under this part, ***including any***

---

(rescission at law "reinvests [a party] with the legal title to the thing for the possession of which he subsequently sues")

***requirement under section 1635 of this title***, or part D or E of this
subchapter with respect to any person is liable to such person [ ]"

The Truth in Lending Simplification Act of 1980 specifically describes and makes

clear that a failure to comply with any requirements of § 1635 dealing with rescission

gives rise to TILA remedies, including costs, actual damages and statutory penalties.

The argument in a belated rescission situation for actual and statutory damages is

simple enough. Either follow § 1635(b), the three-step procedure requesting court

modification within 20-days, or risk the consequence of this Court resolving this

compliance issue in Mr. Barnes' favor. With its eyes wide open, and knowing it had

ripe claims for judicial modification, Defendants declined to do so and risked the

possibility that they could misguide the District Court and that the Ninth Circuit

would rule in their favor prior to *Jesinoski*. They gambled on piecemeal litigation and

made the wrong decision even when FNMA filed a foreclosure action in Oregon State

Court, now abated pending the outcome here.

When this Court avoids protecting the integrity of the Congressional statutory

plain language and policy, allowing Defendants to ignore their obligations, the Court

itself encourages noncompliance. Defendants' failure to respond lawfully to Mr.

Barnes' notice within 20-days receipt, gives rise to a separate damage claim. *See Bland*

*v. Carone Family Trust*, 2007 WL 951344, at *3 (S.D. Cal. Mar., 19 2007); *Gibbons v.*

*Interbank Funding Group*, 208 F.R.D. 278 (N.D. Cal. 2002); *In re White*, 374 BR 257, 263

(Bankr Court D. Kan. 2007)(Pursuant to TILA § 1640(a)(2)(A)(iii), Debtor is entitled to an award of statutory damages for Centex's failure to honor her notice of rescission.).

Nothing in TILA prohibits separate statutory penalties from being enumerated based upon each and every documented event that Defendants failed to comply with mandatory rescission *at law* procedures. Defendants may try to sidestep this problem by asserting that under 15 U.S.C. § 1640(g), Mr. Barnes is only entitled to a single recovery. But § 1640(g) only addresses recoveries for "disclosure violations" and if that were permissible, it would eviscerate § 1640(a) that "include[ed] any requirement under section 1635 of this title." In contrast, § 1640(g) does not address the appropriateness of multiple recoveries for other types of TILA violations such as non-disclosure violations, *see* Rohner and Miller, <u>Truth in Lending</u>, ¶ 12.04 [1][b], p 808 ("Actual and Statutory Damages"). This "rescission violation" is distinct from the "disclosure violations," and warrants multiple statutory recoveries. Further, these multiple penalties are important because they create an incentive for a defiant creditor to rescind a mortgage when faced with a *valid* request instead of forcing the debtor to resort to the courts. *Belini v. Washington Mut. Bank*, 412 F.3d 17 (1st Cir. 2005).

Under a plain reading of the TILA rescission provisions, the "creditor" retains rescission responsibility even after assignment for seeing that the rescission process is carried through under 15 U.S.C. § 1635(b). After receipt of Mr. Barnes' *valid*

Rescission notice, CBUSA who assigned the Note to CHF based on the allonge exhibit ignored by the court earlier, allegedly transferred the security interest instead of complying with rescission procedures, (Doc. 130, Exhibit D). Since there may be a series of assignees, the rescission notice was sent to each of them, (Doc. 130, Exhibit F), because any assignee who has ever held the debt, even briefly, is liable for rescission. *Myers v. Citicorp Mortg. Inc.*, 878 F. Supp. 1553 (M.D. Ala. 1995) (Freddie Mac servicing rules involved), *aff'd*, 208 F.3d 1011 (11th Cir. 2000). Because Defendants cannot raise any material fact issue on these elements, Mr. Barnes is entitled to a judgment on these claims as follows:

- Mr. Barnes *achieved* and *exercised* his rescission rights in writing by sending a *valid* rescission notice to Defendants as provided under § 1635(a); Reg. Z § 226.23(a)(2) and the contract terms;

- Mr. Barnes *achieved* and *exercised* his rescission rights within 3-years under § 1635(f); Reg. Z § 226.23(a)(3);

- Mr. Barnes' rescission request was *valid* because the Notices of Right to Cancel provided to him in connection with this Transaction is clear and convincing evidence that the date rescission rights terminate is inaccurate and contrary to the content requirement under Reg. Z § 226.23(b)(1)(v), a *material* disclosure;

- The violations regarding a *material* TILA disclosure triggers a category of violations giving rise to the extended rescission right;

- Mr. Barnes' right to rescind the Transaction continues until the third business day after receiving both the proper Notice of Right to Cancel and delivery of all "material" disclosures correctly made in a form he may keep pursuant to 15 U.S.C. § 1635(a) and Reg. Z § 226.23(a) and the 3-day right is statutorily extended up to 3-years under 15 U.S.C. § 1635(f);

- The Defendants received Mr. Barnes' notice of rescission as provided under Reg. Z § 226.23(a)(2); (see Panel Op.)

- Within 20-days receipt of a *valid* rescission request, Defendants failed to comply with any requirement under § 1635(b); Reg. Z § 226.23(d)(1)-(4);

- Mr. Barnes' rescission is effective against assignees under § 1641(c).

Accordingly, Mr. Barnes is entitled to judgment on these TILA points of law, including a compliance failure under § 1641(f)(2) alleged in his claim and identified by the Ninth Circuit Panel Opinion. The spurious assignments should also be rescinded.

## IV.    Conclusion

Because a review of the pleadings, with exhibits, and the facts of this case clearly show that Defendants failed to give effect to TILA rescission requirements upon receipt of a proper rescission notice exercise, judgment should be granted. In addition, Mr. Barnes is entitled to multiple civil penalties and requests an evidentiary hearing to enumerate all non-disclosure statutory penalties. Mr. Barnes is in receipt of multiple letters imposing unlawful fees, charges, and interest. Mr. Barnes requests an

accurate accounting so that he can tender, because "[a] court would normally ***
determine the amounts owed before establishing the procedures for the parties to
tender any money or property." *Official Staff Commentary* § 226.23(d)(4)-1

Dated:  September 7th, 2017


Respectfully submitted by:

Timothy Barnes
590 South Greenwood Rd.
Independence, Oregon 97351
503-585-9517
tim@westsidelandscape.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the enclosed Plaintiff's Memorandum in Support of Summary Judgment has been filed with the clerk, U.S. District Court, District of Oregon, and served to the following parties and/or attorneys listed below:

CHASE HOME FINANCE, LLC, and Chase Bank USA, N. A.
Attn.: Michael J. Farrell
MB Law Group, LLP
117 SW Taylor Street, Suite 200
Portland, Oregon 97204

*Attorney(s) for CHASE HOME FINANCE, LLC, Chase Bank USA, N. A.*

IBM Lender Business Process Services, Inc.
Federal National Mortgage Association
Attn.: John Thomas
McCarthy & Holthus, LLP
First Floor
920 SW Third Avenue
Portland, Oregon 97204

*Attorney(s) for IBM Lender Business Process Services, Inc., Federal National Mortgage Association*

The interested parties in this action via the United States Postal Service, certified mail

return receipt requested on this 7th, Day of September, 2017.

Timothy Barnes, *pro se*
590 South Greenwood Rd.
Independence, Oregon 97351